The opinion of the court was delivered, July 2d 1868, by
Sharswood, J.
The platform of a railroad company at its station or stopping-place is in no sense a public highway. There is no dedication to public use as such. It is a structure erected expressly for the accommodation of passengers arriving and departing in the train. Being unenclosed, persons are allowed the privilege of walking over it for other purposes, but they have no legal right to do so. The servants of the company, after requesting them to leave, can remove them by whatever force may be necessary: Barker v. The Midland Railway Co., 18 C. B. 46; Corinth v. Power, 7 Metc. 596; Hall v. Power, 12 Id. 485; Harris v. Stevens, 31 Verm. 79. Still, even a trespasser on the land of another can maintain an action for a wanton or intentional injury inflicted on him by the owner. It will appear on an examination of the interesting and elaborate discussion in the English courts of the question whether an action could be supported by such a trespasser for personal harm occasioned by a spring-gun, mantrap or dog-spike, set on the grounds of the defendant, in which it was determined that where there was no proper warning given, such an action well lies; that it was rested mainly on the ground that a man cannot lawfully do indirectly that which it is unlawful for him to do directly. He cannot shoot or maim or set a ferocious dog upon a mere trespasser. He shall not there place a concealed machine where it will be likely to do the same thing, or let such a dog loose in his grounds without warning: Deane v. Clayton, 7 Taunt. 489; Ilott v. Wilkes, 3 B. & Ald. 304; Bird v. Holbrook, 4 Bing. 628. It is, however, equally well settled that the owner of property is not liable to a trespasser, or to one who is on it by mere permission or sufferance, for negligence of himself or servants, or for that which would be a nuisance if it were in a public street or common, where all persons had a legal right to be without question as to their purpose or business.
It will be unnecessary to pass in review all the cases which in England and this country establish the principle, or to examine and reconcile if possible those which seem to conflict with it. It is put in many of them on the grounds of contributory negligence in the trespasser. It is plain, however, that the two principles are entirely independent of each other, though they do in fact often concur, and thereby have made confusion. In Hounsell v. Smith, 7 C. B. N. S. 731, the plaintiff fell down a quarry, which was left open and unguarded on the unenclosed waste lands of the defendant, over which, in passing from one public highway to another, the public were freely allowed to walk: it was held that the defendant, the owner, was under no legal obligation to fence the *142 excavation, unless it was madé so near to a public road or way as to constitute a public nuisance, or, in other words, to render the lawful use of such public road dangerous. “No right is alleged,” says Mr. Justice Williams, “ it is merely stated that the owners allowed all persons who chose to do so, for recreation or for business, to go upon the waste without complaint; that they were not churlish enough to interfere with any person who went there. He must take the permission with its concomitant conditions, and it may be, perils.” This decision was cited with approbation and affirmed in Rinks v. The South Yorkshire Railway and River Dun Co., 3 Best & Sm. 244. But a much stronger case, and more directly in point, is Lygo v. Newbold, 9 Exch. 302. It was there decided that even an express permission given to the plaintiff by the defendant’s servant to occupy a place to which she had no right would not cast responsibility on the master. The plaintiff in that case, without the defendant’s authority, but by the permission of his servant, rode in a cart along with some goods which the defendant had contracted to carry for her. The cart, being insufficient, broke down, and the plaintiff was injured. It was held that she could not recover.
Thus the three superior courts of England; the Common Pleas, Queen’s Bench and Exchequer, concur in this doctrine.
But our own case of Knight v. Abert, 6 Barr 472, is on all fours with them. It was there decided that though no action lies in Pennsylvania for trespass by cattle pasturing on unenclosed woodland, yet, that not being a matter of right, the owner of land is not liable for an injury sustained by such cattle falling into a hole dug by him within the bounds of his land and left unenclosed. “He who suffers his cattle to go at large,” says C. J. Gibson, “takes upon himself the risks incident to it.” So must a person, using by permission or sufferance the private property of another, take upon himself the risks incident to it. To the same effect, if closely examined, is The Philadelphia and Reading Railroad Company v. Hummel, 8 Wright 378. The plaintiff below in that case was a boy of tender years, to whom no contributory negligence could be imputed. He was on the track of a railroad, not at a crossing. It was held that the railroad company, as to persons so on the track, were not bound to give any .Earning at starting. “ Blowing the whistle of the locomotive, or making any,other signal,” said Mr. Justice Strong, “was not a duty owed to the persons in the neighborhood, and consequently the fact that the whistle was not blown, nor signal made, was no evidence of negligence.” And, again: “There is as perfect a duty to guard against an accidental injury to a night intruder into one’s bed-chamber as there is to look out for trespassers upon a railroad where the public has no right to be.” Ho reference is made in the opinion to Lynch v. Nurdin, 1 Q. B. 29, a decision *143 much controverted, but one which has stood its ground. But in that case the careless act of the defendant, in leaving a horse.and cart standing in a public street without anybody to watch it, amounted to a nuisance, and it is to be distinguished on that ground. Had it been left standing on an open, unenclosed lot, the ruling in all probability would have been different. Yet a doubt has been more than once expressed, whether when a child receives an injury from indulging in what is called “ the natural instinct of a child,” by getting up behind a gentleman’s carriage whilst it is in motion, or standing in charge of a coachman, though without a servant on the footboard, the principle of Lynch v. Nurdin would apply: Wilson v. Brett, 11 M. & W. 113; Lygo v. Newbold, 9 Exch. 302. It would matter not, so far as his master was concerned, whether the coachman allowed it or not.
The application of this principle to the determination of the case in hand is not difficult. The plaintiff may not have been technically a trespasser. The platform was open; there was a general license to pass over it. But he was where he had no legal right to be. His presence there was in no way connected with the purposes for which the platform was constructed. ’’ Had it been the hour for the arrival or departure of a train, and he had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by the authority of defendants, as much as if he was actually a passenger, and it would then matter not how unusual might have been the crowd, the defendants would have been responsible. As to all such persons to whom they stood in such a relation as required care on their part, they were bound to have the structure strong enough to bear all who could stand on it. As to all others they were liable only for wanton or intentional injury. The plaintiff was on the spot merely to enjoy himself, to gratify his curiosity or to give vent to his patriotic feelings. The defendants had nothing to do with that. They were conveying the President of hhe United States and his party on a special excursion train. They must have stopping-places. They were certainly under no obligation to keep them secret. On the occasion in question it seems that they meant to do so in order to prevent detention and confusion. As we have seen, they cannot be made liable by the unauthorized act of one of their employees, through whom it leaked out what the hour was the train was expected to arrive at Johnstown, nor for that of another in backing up the train so as to give the people who had assembled an opportunity of seeing and hearing the President. I am bound to have the approach to my house sufficient for all visitors on business or otherwise; but if a crowd gathers upon it to witness a passing parade and it breaks down, though it may be shown not to have been sufficient even for its ordinary use, I am not liable to one of the crowd, — I *144 owe no duty to him. If a traveller by foot, on the open track of a railroad, crosses a bridge, which ought to be, but is not in its ordinary use, strong enough to bear a locomotive and train of cars, and a rotten board breaks down under him, the company are not liable to him, for they owe him rio duty. However much to be lamented was the sad occurrence which occasioned this suit, and however much sympathy may be felt for those who were injured, and the families of those who lost their lives, we are of the opinion that the circumstances of the case were not such as to cast any pecuniary responsibility on the railroad company, and that the learned judge below was therefore right in directing the jury to find a verdict for the defendants.[1]
Judgment affirmed.

 The main question decided in this case has’very recently been considered and decided in the same way in Gautret v. Egerton, Law Rep. 2 C. P. 371, and Holmes v. N. E. Railway Company, Law Rep. 4 Ex. 254.