PENNSYLVANIA R. CO. v. MARTIN.

(Circuit Court of Appeals, Third Circuit. November 11. 1901.)

1. RAILROADS—INJURY TO LICENSEE — PERMITTING USE OF PATH ON RIGHT OF WAY.

Plaintiff was walking along a path on the right of way of defendant's railroad, near the track, when he was struck and injured by a piece of brake shoe, which broke and flew off from a passing car. The path was used to some extent, without objection from defendant, by passengers going to and from a station near by, and plaintiff testified that. when injured, he was on his way to such station to meet a passenger, who was expected to arrive an hour later, and whom he desired to see on business of his own. Plaintiff and others also used the path in going to and from their work. *Held* that, conceding that plaintiff might have been considered as being on the right of way by defendant's invitation, had it been near the time for the arrival of the train which he expected to meet, under the circumstances shown he was at most merely a licensee, to whom defendant owed no duty of protection, except from wanton or willful injury.

2. SAME—NEGLIGENCE—BREAKING OF BRAKE SHOE.

A railroad company is not chargeable with negligence because of the breaking of a brake shoe on a car in one of its trains, where it was not too much worn for use, and, so far as any inspection would have shown, had no defect which ought to have prompted its rejection, and where the car and shoe were fully inspected but a few hours previously, and no defect was at that time apparent, either in the shoe or wheel, which would cause the shoe to break.

3. TRIAL—DIRECTION OF VERDICT.

Where the evidence is so conclusive that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it, the trial judge should direct a verdict, when requested.

In Error to the Circuit Court of the United States for the District of New Jersey.

Alan H. Strong, for plaintiff in error.
C. H. Beasley, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and KIRK-PATRICK, District Judge.

DALLAS, Circuit Judge. The plaintiff (below) sued to recover damages for personal hurt, which (as he claimed and we may assume) was inflicted upon him by a piece of iron, part of a brake shoe, which was projected from one of the cars of a rapidly moving train of the defendant (below) and struck the plaintiff, who was walking alongside the track. It has been properly conceded that, if the case should have been submitted to the jury at all, the instructions which accompanied its submission would not have been open to criticism; but the learned trial judge was asked to direct a verdict for the defendant, and his refusal to do so is here assigned for error. Consequently, the question now for decision is, was there any evidence to sustain the verdict, which was in fact, and by allowance of the court, rendered for the plaintiff? Or, to state it with more particularity, was there any evidence to support the findings which were in law essential to warrant that verdict, viz. (1) that the defendant owed the plaintiff a duty of care, and (2) that that duty, if owing, had not been discharged?

1. The plaintiff was employed in the Equitable Pottery, from a gate of which there was a path upon the defendant's right of way, running alongside the rails for a considerable distance to a station platform, and thence over that platform to a public street in the city of Trenton, called "Lalor Street," which adjoined the station and crossed the track at, or nearly at, right angles therewith. This path had for a long time, without objection by the railroad company, been used by the employés of the pottery in going to and from their work. The plaintiff was walking upon it at the time of the accident, and, if he had then been going to his home, he would have been, though not a trespasser, a licensee simply, to whom the defendant would not have been liable, except for wanton or intentional injury. But there was evidence that this path had been also used, with the company's acquiescence, as a way to and from its station, by persons taking or leaving trains at that point; and the plaintiff testified that upon the occasion in question he was going to the station to await the arrival of a passenger by a train which was due there about an hour later. He said:

"I was going there to meet a friend of mine on some business. * * * I did not make any appointment with him, but I wanted to see him on particular business. * * * I wanted to see Mr. Ristow for the purpose of getting some prices of saggers by him."

This testimony was adduced to maintain the plaintiff's theory that he was upon the defendant's property, not by sufferance merely, but by its implied invitation, and that therefore the company's relation to him was such as entitled him to the exercise of care upon its part. We, however, are of opinion that, assuming the truthfulness of the testimony, the facts shown by it do not admit of the inference which

the jury was permitted to deduce from them. The learned judge in his charge said:

"Now, then, if you come to the conclusion that he was on his way across the land of the defendant by the implied invitation of the defendant, for a purpose connected with the business of the railroad company, then you have to consider a still further question [the question of negligence]."

We agree that, if there had been any evidence from which the conclusion that the plaintiff was on the defendant's land by its implied invitation could have been legitimately reached, this instruction would have been unobjectionable; but, as we have said, we are of opinion that such conclusion was legally impossible upon any view which could reasonably be taken of the facts shown, and therefore we think that the peremptory instruction which was requested ought to have been given. Had the plaintiff been upon the platform, at or about the time for the arrival of a train, for the purpose of meeting a passenger to arrive by that train, it may be that his motive or reason for desiring such meeting would not have been a material subject of inquiry. In Gillis v. Railroad Co., 59 Pa. 143, 98 Am. Dec. 321, it was said:

"Had it been the hour for the arrival or departure of a train, and he had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by authority of the defendants, as much as if he was actually a passenger."

But, assuming, without now deciding, that one who goes to a railroad station, at or near the hour for the arrival of a train, to meet a passenger, is, without regard to his inducing purpose, there by invitation to be implied from a general and allowed custom, still the facts of this case are peculiar and distinguishing. The plaintiff was upon the defendant's right of way, as were several others of the pottery workmen who were admittedly but licensees; and it is he who sets up the object he had in view, as taking him out of that category and authorizing him to be there as much as if he had been actually a passenger. But he was where even one who purposed to become a passenger would not, at the time and under the circumstances, have been entitled to protection. The defendant was under no obligation to exercise especial care respecting this particular part of its roadbed beyond what was requisite to avoid injury to those whose use of it was that which had been sanctioned. Its acquiescence in the adoption of the adjacent path by passengers, as a means of going to and from the Lalor Street station, did not impose upon it a duty to regard the condition of all cars which might pass near it at any time, without reference to the hours for the arrival and departure of its trains at or from Lalor street. It was not bound to take precaution for its safety, except when the authorized use could properly be made of it, and might reasonably be anticipated. In allowing passengers to go by this path to trains ready or about to become ready to receive them, the company did not invite any one, even when intending to ultimately become a passenger, and, a fortiori, if not so intending, to go by that way, or by any other, to its station long before train time, in order that he might loiter there for an hour or more to await an interview with a third person upon a subject with which the com-

pany was not in the least concerned. Such a use can in no way be connected with the purposes for which the station was constructed. It is not a use which passengers usually make, or are impliedly invited to make, of it. The purpose is solely that of the particular user, and consequently he is, at most, but a licensee, to whom the company owes no duty but such as pertains to that voluntarily assumed relation. Gillis v. Railroad Co., 59 Pa. 129, 98 Am. Dec. 317; Railroad Co. v. Aller (Ohio) 60 N. E. 205. As was said in Hargreaves v. Deacon, 25 Mich. 1 (quoted with approval in Railroad Co. v. Schwindling, 101 Pa. 263, 47 Am. Rep. 709):

"We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant."

2. If the existence of the duty alleged to have been owing by the defendant to the plaintiff had been established, yet the issue as to defendant's negligence should, in our opinion, have been withdrawn from the jury. It is undoubtedly true that in actions like this the question of negligence is ordinarily for the jury, under proper direction. But it is too well settled for controversy that when the evidence is so conclusive that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it, the trial judge not only may, but should, when requested, give binding instructions; and the present case, we think, plainly called for the application of this rule. The brake shoe, a part of which struck the plaintiff, was not too much worn for use, and, so far as any inspection would have disclosed, there was nothing which ought to have prompted its rejection. A slight flaw in the iron became apparent after it broke, but could not have been previously observed. These facts were not controverted. On the contrary, the plaintiff tried his case upon the theory that the fracture of the brake shoe was caused by a flattened wheel, and to sustain this theory he produced but a single witness, who testified that it was his opinion that the breaking of the shoe was due to that cause. He also testified that a flattening of "about half an inch in the center" might produce such a fracture; that a wheel might become flattened to that extent in running one mile, and that "it would make the wheel go thud, thud, * * * every time it revolved around," which "would be quite a noticeable thing." This is the substance of all the evidence which the plaintiff produced upon the question of negligence, and we strongly incline to the opinion that, if a judgment of nonsuit had been entered, the case would have been properly disposed of; for it had not been made to appear that the railroad company had omitted any precaution which it ought to have taken, or that by the exercise of ordinary care the flattening of a wheel could have been either prevented or remedied while the train was running between stations situated more than a mile apart.

The action of the court below in overruling the nonsuit is, however, not subject to review. The only specification to be dealt with is that which alleges that the court erred in refusing the motion of the defendant to direct a verdict in its favor, and under that specifica-

tion all the evidence, as well that adduced by the defendant as by the plaintiff, is·for consideration; and that which was presented on behalf of the defendant, and in no way met or answered on behalf of the plaintiff, absolutely refutes his charge of negligence. It shows that the cars which composed the train in question were in Camden for about four hours before they started for Trenton; that the company had an established system of inspection, the reasonable adequacy of which seems to be unquestionable, and at all events was not impugned. In pursuance of this system, and during the time that the car to which this brake shoe was attached was at Camden, it was several times inspected, and at each inspection the wheels, brake shoe, etc., were examined, and no flat wheel, or defect in the shoe, was discovered. Moreover, the engineer and the conductor of the train testified that they listen for flat wheels, and can hear the noise they make, but that they did not discover the presence of any such wheel upon that train on that.day. There was other testimony tending to prove due care, but it is unnecessary to refer to it. It is enough to say that we have found no evidence whatever of any negligence on the part of the defendant, and it follows that the judgment of the circuit court must be reversed, and it is so ordered.