NATIONAL ASS'N OF RY. POSTAL CLERKS v. SCOTT.

(Circuit Court of Appeals, Second Circuit. May 30, 1907.)

No. 270.

1. INSURANCE—ACTION ON ACCIDENT POLICY—BURDEN AND MEASURE OF PROOF.
To warrant a recovery on an accident policy insuring against death only when it results alone from an accidental injury, the plaintiff must establish two fundamental propositions: First, that there was an accidental injury; and, second, that it alone caused the death.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1721.]

2. SAME—PROOF OF ACCIDENTAL INJURY—SUFFICIENCY OF EVIDENCE.
In an action to recover for the death of an insured under an accident policy or certificate which provided that the insurer should be liable for death only in case it resulted alone from bodily injuries received through external, violent, and accidental means, the plaintiff was not entitled to recover where the sole evidence relating to the receipt of any accidental injury by the deceased was testimony showing that some three months prior to his death there was a discolored spot on one of his shins, several inches in extent, which might have been caused by a bruise or an abrasion.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1721.]

3. TRIAL—DIRECTION OF VERDICT—INSUFFICIENCY OF EVIDENCE.
Under the rule of the federal courts, a court should direct a verdict where the evidence produced by the party on whom rests the burden of proof is insufficient to sustain a verdict in his favor.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 376–380.]

In Error to the Circuit Court of the United States for the Western District of New York.

On writ of error to the Circuit Court for the Western District of New York to review a judgment entered upon the verdict of a jury in favor of the plaintiff for $3,420.40, upon a certificate of insurance for $3,000, issued by the defendant to Winfield L. Scott for the benefit of the plaintiff, who was his wife.

Edward P. White, for plaintiff in error.
Carey D. Davie, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The certificate issued to Scott provides that if, during its continuance, he shall receive bodily injuries "through

external, violent and accidental means" and "if death shall result from such injuries alone within one hundred and twenty days the association will pay not to exceed $3,000 * *, * to Mary A. Scott, his wife."

The complaint alleges that on or about November 1, 1902, at the village of Cuba "and while the said Winfield L. Scott was actually engaged in the performance of his duties as a railway postal clerk he received severe injuries by accidental, external and violent means, which injuries received as aforesaid caused the death of said Winfield L. Scott on the 25th day of January, 1903; that such injury, received as aforesaid, was entirely accidental, and that the same was the cause of the death of said Winfield L. Scott, and that such death occurred within the period of one hundred and twenty days after the occurrence of such injury."

This allegation is denied by the answer, the defendant alleging that death resulted from natural causes.

At the close of the testimony the court was asked to direct a verdict for the defendant on the ground that the plaintiff had failed to prove a case of death from accidental causes. The court was at first disposed to grant the motion, saying:

"My impression is that there is no evidence here of accidental death. I think I must ask you to convince me that this death was caused by one of these reasons specified in the policy and the constitution of the order."

Subsequently, however, he became convinced that there was "some evidence tending to show that prior to November 1, 1902, the decedent was a strong healthy man not afflicted with any of these diseases with which he was subsequently afflicted," and concluded to submit the case to the jury.

The principal question litigated was this: Did the assured receive on November 1, 1902, an accidental injury, and, if so, did death result from this injury alone?

In approaching the consideration of this question it is well to bear in mind that the law places upon the plaintiff the burden of establishing two fundamental propositions: First, that there was an accidental injury; and, second, that it alone caused the death of Scott.

The evidence is overwhelmingly to the effect that prior to November, 1902, Scott was far from well; he had been reduced in salary and placed on the short run between Salamanca and Hornellsville, instead of the long one between Salamanca and Jersey City. During the seven years prior to his death he was frequently off duty on account of sickness and wrote to the chief clerk explaining the cause of his absence and the nature of his illness, as shown by certificates of physicians inclosed. Thus, from January 1 to March 1, 1900, Dr. Lattin certified that he was suffering from "albuminuria," which incapacitated him from attending to duty; from April 30 to May 31, 1902, Dr. Wilcox certified that he was unable to attend to his duties because of an operation for "double hernia"; from June 27 to July 5, 1902, he was treated by Dr. Miller for "congestion of the liver and palpitation of the heart," and from November 4th to November 6th he was suffering from "heart trouble," as certified to by Dr. Bourne. Dr. Bozovsky, of Dunkirk, attended him from December 17, 1902, to December 30, 1902,

and certified that his ailment was "torpid liver and nephritis," and the same physician certifies that the chief cause of death was "nephritis," the contributing cause being "valvular heart trouble."

Within six months prior to November 1st, therefore, Scott, who was 60 years of age, had been treated for double hernia, congestion of the liver and palpitation of the heart. In view of all this it is not surprising that July 5, 1902, he wrote his chief: "Dr. Miller says I was pretty near a goner on June 27th." After November 1st there are certificates from three physicians as to Scott's maladies, but no one of them mentions an accident or the discovery of a bruise upon one of his shin bones. On November 6, 1902, Scott wrote Chief Wade: "I was taken seriously ill Tuesday night (November 4). My heart rather failed me." On November 11th and 13th and on December 1st he also wrote Wade, but in none of these was there any allusion to an accident or a bruise.

Under the certificate of insurance Scott was entitled to receive "a sum not exceeding $15.00 per week against loss of time." Although he was off duty for 12 weeks after November 1, 1902, he made no application for an allowance and did not mention any accident, notwithstanding the fact that he wrote to the defendant's collector paying an assessment about November 20th.

An autopsy was made February 4, 1903, and the physician who made it testified as follows:

"I examined the thorax and found both lungs in a state of congestion and engorgement, indicating pneumonia in life. The left pleura was adherent, showing that an old pleurisy had existed. The heart was hypertrophied; the left ventricle being greatly thickened. The middle valve of the aorta had a calcareous deposit at its base which seriously interfered with the closing of the valve, making a permanent heart leak. The aorta just above the valve had a patch of calcareous degeneration in it about half an inch long, and there were several other smaller patches of calcareous degeneration near it in the vessels beyond. The liver was simply engorged with bile, there being an impacted stone in the cystic duct pressing on the common duct and a suppurating gall bladder. Both kidneys showed degenerative processes, the capsules peeling readily, and an abscess was found in the upper part of the left kidney; constricted and encysted appendix. Other abdominal organs normal. From what I saw of the lungs and their condition, pneumonia had been present at the time of death. Pneumonia of both lungs of the degree observed, together with the weak and leaking heart, was practically of a fatal nature. In cases of serious pneumonia, a weak heart, or a heart such as that of the deceased, is a serious additional factor."

To find that Scott was a strong healthy man on the first day of November, 1902, involves the conclusion that he was a malingerer and a falsifier and that the physicians who certified to his disabilities were either charlatans or incompetents. On the contrary, the record shows that Scott was a hard working, conscientious, honest man and that the physicians were men of learning and high standing in their profession.

But, let it be assumed that there was sufficient dispute upon the testimony to warrant the submission of the question as to his previous health to the jury, how then stands the case? The entire fabric of the defendant's liability is built upon the theory that Scott received an injury on November 1, 1902, at Cuba, which caused his death. This

is the keystone of the plaintiff's case; if it be removed the entire structure falls to the ground. We have searched the record in vain for evidence of such an injury or, indeed, of any injury, on that day. The plaintiff testified that when her husband left home on the last day of October he was in good health, with no wound on his leg and that when he returned at 4 o'clock on November 1st he appeared sick, feeble and weary. There was a bruise on his left shin five or six inches long and two or three inches wide; it looked red. Dr. McIntosh saw this bruise in November but did not examine it until December. He thus describes it:

"It was very much discolored. It looked as though the skin had been rubbed or jammed and quite badly discolored. The discoloration was up and down the leg. It might have been five or six inches in length and four or five wide, about that. It did not look as though there had been any tearing through the skin, to get down through the whole of the skin."

When, where or how this bruise was received does not appear. There is no proof that it was received at Cuba on November 1st. In fact the testimony of the trainmen is to the effect that Scott performed his duties as usual that day. He said nothing about an accident and they heard of none. The postal clerk at Hornellsville, in whose office Scott was required to register, saw him November 1st. He also saw him on his next trip, November 3d. He said he was going to Cattaraugus to vote. On the night of election day he went to Salamanca intending to take his usual trip in the morning. That night he was found at his boarding house, in Salamanca, by Dr. Bourne in a serious condition from which he was aroused by hypodermics of strychnine and digitalis. On the 6th of November he went to his home where he remained until December 18th, when he was taken to the home of his son, at Dunkirk, where he remained until his death.

In the hypothetical questions addressed to the medical experts the plaintiff's counsel assumes that Scott received an external injury on November 1st severe enough to produce shock which caused all the other ailments which resulted in his death. Indeed, the trial proceeded from beginning to end upon this theory, which would be plausible enough were not the major premise—injury through external, violent and accidental means—wholly lacking.

It is true that he had a bruise on his left shin, but everything else regarding it is left to conjecture. Instead of proving an injury received at Cuba on November 1st severe enough to produce shock, the presence of shock caused by the injury and nephritis and heart disease resulting from shock, the plaintiff's logic is in the inverse order. The argument proceeds on the following hypotheses—that death on January 25, 1903, was caused by diseases which may have been produced by shock, that shock may be caused by a severe external injury, that a bruise on the skin indicates an external injury, therefore Scott must have received such an injury on November 1st at Cuba. It will be observed that there is a fatal hiatus between the fact that death occurred and the conclusion that it was caused alone by an external injury.

We are of the opinion, therefore, that the court should have directed a verdict for the defendant on the ground that the plaintiff had not

sustained the onus of proving that Scott's death was caused alone by external violent and accidental means.

As there was no direct proof of this fundamental fact and as plaintiff's contention regarding it rested only upon presumption and guesswork, it was the duty of the court to direct a verdict for the defendant.

In Com'rs v. Clark, 94 U. S. 278, at page 284, 24 L. Ed. 59, the court says:

"Decided cases may be found where it is held that, if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule; to wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." North Penn. R. Co. v. Com. Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Anderson Co. Com'rs v. Beal, 113 U. S. 227, 241, 5 Sup. Ct. 433, 28 L. Ed. 966; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Treat Mfg. Co. v. Standard Steel & I. Co., 157 U. S. 675, 15 Sup. Ct. 718, 39 L. Ed. 853; Cudahy Packing Co. v. Marcan, 106 Fed. 645, 45 C. C. A. 515, 54 L. R. A. 258; Penn. R. Co. v. Martin, 111 Fed. 586, 49 C. C. A. 474, 55 L. R. A. 361.

Even if it be assumed that there was an injury as alleged in the complaint it is doubtful if there was sufficient evidence to go to the jury upon the question whether or not the injury alone caused the death. The law on this subject is well stated in Masonic Ass'n v. Shyock, 73 Fed. 774, 20 C. C. A. 3, as follows:

"The burden of proof was upon the defendant in error to establish the facts that William B. Shyock sustained an accident, and that that accident was the sole cause of his death, independently of all other causes. If Shyock suffered such an accident, and his death was caused by that alone, the association agreed by this certificate to pay the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an accident, but at the time it occurred he was suffering from pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with disease or infirmity, but died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, then the defendant is not liable, because the express contract was that the association should not be liable for the amount of the insurance, for in such a case death would not be the result of accident alone, but would be caused partly by the disease and partly by the accident."

The death being produced by Bright's disease assisted by valvular heart trouble it is difficult to perceive, in view of the prior difficulty with the heart, how it can be said that the injury alone caused the death. However, we prefer to rest the decision upon the entire absence of any competent proof of the happening of the alleged accident.

The judgment is reversed and a new trial ordered.