## RAILWAY MAIL ASS'N v. HARRINGTON.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 121.

1. INSURANCE ☞668—ACTION ON ACCIDENT POLICY—QUESTIONS FOR JURY.
Conflicting evidence considered, in an action on an accident policy to recover for the death of the insured, and held to justify the submission of the case to the jury.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. ☞668.]

2. INSURANCE ☞659—ACTION ON ACCIDENT POLICY—EVIDENCE OF CAUSE OF DEATH.
A railway mail clerk, on leaving his car at the end of a run, gave indications of a severe pain in the abdomen. A few days later he became incapacitated, was taken to a hospital, and operated upon, but died from peritonitis. There was a yellow spot of some size of recent origin on the skin over the appendix, and the autopsy developed that there were adhesions beneath such spot. In an action on an accident policy to recover for his death, it was shown that he was a young man and had previously been in good health. There was medical testimony that the appendix was split, and not perforated, which indicated that the injury was caused by violent external means, causing appendicitis, naturally followed by the peritonitis. Deceased was alone in his car during the run. Held that, in the absence of admissible direct evidence, it was competent for plaintiff to show, as justifying an inference as to the manner of injury, that there was an iron rack in the car, the corner of which was at about the same height above the floor as the discolored spot would be when deceased was standing at the rack, and that the road over which his route ran was very rough.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1691–1693; Dec. Dig. ☞659.]

3. INSURANCE ☞659—ACTION ON ACCIDENT POLICY—EVIDENCE.
In an action on an accident policy to recover for the death of the insured, the exclusion of a certain part of the attending physician's statement, filed with the notice of death, which was offered in evidence by defendant, without including other questions and answers contained therein, held not error.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1691–1693; Dec. Dig. ☞659.]

In Error to the District Court of the United States for the Western District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Western District of New York, in favor of defendant in error, who was plaintiff below. The action was brought to recover upon an accident insurance policy issued to plaintiff's husband,

providing for the payment to her of $4,000 if he should receive bodily injuries through external, violent, and accidental means, and death should result from said injuries alone within 120 days.

F. A. Robbins, of Rochester, N. Y., for plaintiff in error.

J. W. Hollis, of Hornell, N. Y., and H. A. Heminway, of Corning, N. Y., for the defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The assignment of error to which the argument for defendant was mainly directed is the sending of the cause to the jury against his objection.

There was uncontradicted testimony that the deceased on July 26, 1911, upon returning to the hotel at Tupper Lake where he resided from the mail car in which he worked, made an exclamation of pain, and placed his hand on his abdomen; immediately thereafter, contrary to his usual custom, he went to bed; that he continued to discharge his duties on the mail car until August 1st, acting as if ill or in pain; that on the evening of that day he went to bed, remained there until August 11th, when he was removed to a hospital, where he was operated upon, and died August 13th of general peritonitis. The theory of plaintiff was that Harrington met his death as a result of septic peritonitis, following traumatic appendicitis, caused by external violence.

There was testimony that prior to July 26th he was a healthy, vigorous man, 27 years of age; that subsequent to July 26th a yellowish spot was seen on his abdomen about the size of a half dollar; that as late as May 30th his abdomen was free from any mark or scar; that the mail car in which he worked contained an iron rack, the corner of which was about the same level above the floor that this spot on deceased's abdomen would be if he were standing by the rack; that the roadbed was unusually rough, and that the car sometimes rocked so that letters were thrown out of the boxes; that at the autopsy there were found under the spot, which was located at McBurney's point directly over the vermiform appendix, adhesions, which in the opinion of some of the medical witnesses indicated that the spot had been caused by some external violent means, such as a blow; that the appendix was found to be split, not perforated, which also in the opinion of some of the medical witnesses indicated that the wound to the appendix had been caused by external violence; that this rupture of the appendix produced appendicitis, naturally followed by peritonitis, of which Harrington died. Some of the medical witnesses also testified that the appearance of the spot indicated that it was of recent origin.

As to some of these propositions there is conflicting testimony—for example, some of the medical witnesses state that the appendix was perforated, not split; some of them were of the opinion that the appearance of the spot indicated that it was the scar of an old wound. But if the jury accepted the statements enumerated above, and their verdict shows that they did, they were warranted in drawing the conclusion that, in the language of the policy, deceased's bodily injuries were received "through external, violent, and accidental means," that the accident resulted "in producing visible external marks of injury

or violence suffered by the body" of deceased, and that death resulted, within the time specified in the contract, "wholly from the injury."

Defendant relies on our decision in National Association of Railway Clerks v. Scott, 155 Fed. 92, 83 C. C. A. 652, which was an action on a similar policy, in which plaintiff recovered a verdict, which this court set aside on the ground that plaintiff had not sustained the burden of proving that death was caused by external, violent, and accidental means, that deceased had suffered an injury, and that such injury alone caused death. The facts in that case are so different from the facts in this case that the decision is not applicable. In the Scott Case deceased had been for years in ill health, suffering from albuminuria, congestion of the liver, palpitation of the heart, and nephritis. The death certificate gave as the chief cause of death nephritis, and as contributing cause valvular heart trouble. The only evidence of a blow was a bruise on the shin. There was no contention that a blow received there would produce any of these troubles; no such causal connection was suggested as there is testified to here between a blow immediately above the appendix and a rupture of the latter. The theory in the Scott Case was that because of the bruise on the shin it might be inferred that at the time it was received he had had a heavy fall, causing general shock, from which, again, it might be inferred that the other ailments ensued.

We found, therefore, that there was a fatal hiatus between the fact that death occurred and the conclusion that it was caused alone by external injury. In the case at bar, if the jury believed the witnesses on whom plaintiff relies, they might fairly find a direct connection between the blow that produced the spot and the rupture of appendix, which caused the disease that proved fatal to this man, theretofore in good health.

The jury was fully and carefully instructed. No exception to these instructions which calls for special comment was reserved. The only two covering any part of the charge are substantially to the submission of the cause to the jury. As stated in the brief of plaintiff in error, these exceptions raised in substance the same question that was raised by motions for nonsuit and for direction of verdict.

[2] Error is assigned to the admission of testimony as to the interior arrangement of the mail car, and the roughness of the road—circumstances from which plaintiff argued that the jury might infer that the blow came from Harrington's being thrown against the corner of the rack. There was no direct testimony to any such accident. There is nothing to indicate that on the regular run of this car there was any one in it except the single clerk in charge. If so, no direct testimony was obtainable. Death kept Harrington off the witness stand. Statements which he may have made to others, after he left the car, as to anything which had occurred to him during the day's run, would be too remote for admission on the theory of res gestæ. A similar situation arises when a man is found dead at a place where a railroad train has just passed, there being no eyewitness of his death. Circumstantial evidence, if convincing, may establish the proposition that he died because the train struck him. Harrington's first indication that he was suffering pain was given immediately after he left his car on July 26th,

and it seems to us that it was not error to show the condition of things in the car, and its irregular movements on the rough roadbed, as circumstances to be considered by the jury in deciding whether on that day he received an injury through external, violent, and accidental means.

[3] Error is also assigned to the court's refusal to admit in evidence part of a document offered by defendant. The constitution and by-laws of defendant were made a part of the policy. They were put in evidence, but a portion only is printed in the record. No doubt they provided, as all such documents do, for formal written notice and signed statements as a condition precedent to the allowance of any claim. When the attending physician was on the stand, as witness for the plaintiff, counsel for plaintiff called for the physician's statement, made on a blank form of defendant, which had been filed with plaintiff's claim, and had the witness identify it as the blank he had filled up and signed. Thereupon it was marked "No. 3 for identification." Presumably plaintiff's counsel wished to be prepared with available evidence in case some technical objection were raised as to sufficiency of the papers accompanying the claim.

Upon cross-examination the witness again identified the statement and his signature thereto. Thereupon the defendant offered in evidence a portion of the document, "omitting the question and answer, 'What is the precise nature of the injury, its extent, and your diagnosis?'" The answer to this question given in the document reads: "Struck the projecting corner of the iron mail rack while at work in his car. The blow struck squarely in the region of the vermiform appendix. Traumatic appendicitis." The question immediately preceding reads: "What visible signs did you find of an injury caused by external, violent, and accidental means?" The answer to it reads: "Swelling over region of vermiform appendix." Defendant wanted to get this last answer in evidence, in order to argue from it that the witness' prior testimony as to the presence of the yellow spot should be discredited. But he did not want the answer to the other question, because it gave what the physician had been told was the "history of the case," on which, as well as what he sees, a physician usually bases his diagnosis.

On the margin of Exhibit 3 for identification, above its title, the physician had also written a memorandum purporting to give the names and addresses of persons whom the deceased had told about his injury. This was not responsive to any question in the printed form; it was in no way connected with the "physician's statement"; it was a gratuitous deliverance of the physician. The circumstance that it was written on the margin of the paper which contained the "statement" did not make it a part thereof, any more than it would have been, had it been inscribed on a scrap of paper and pinned to the statement. Had the offer of Exhibit 3 in evidence with this addendum elided been rejected, it would have been error; but no such offer was made. Defendant insisted on eliding the whole of one question and answer, and rejection of the offer by the court was put on the ground that it was not fair to put in the one answer without the other.

220 F.—40

Exhibit 3 was not evidence on any issue raised in the cause. It evidenced the fact that on a certain date a "physician's statement" in the form required by the contract had been prepared and signed; but no question was raised as to noncompliance with technical requirements of this sort. It also showed that on the same date the physician had made certain statements—a wholly immaterial circumstance. The only object of the offer was to base an argument on these statements as to the persuasiveness of the physician's testimony on the trial. The testimony tended to show that if the only basis of diagnosis were a swelling at the place indicated, plus other internal symptoms, a correct diagnosis would have been "appendicitis" merely, arising from natural causes, not "traumatic appendicitis," induced by some violent external means. On the trial the witness testified that the disease was "traumatic appendicitis." If the question and answer which defendant wished put in were admitted, and the other question and answer excluded, a plausible argument might be made that this suggestion of "traumatic appendicitis" was an afterthought of the physician, brought forth for the purposes of the trial; that in his signed "statement," made five days after Harrington's death, he had incorporated nothing to indicate either that he then believed the disease to be "traumatic appendicitis" or had any grounds for such belief. To admit the mutilated statement would have been unfair to the witness, because the entire statement did show that at the time he signed it he had diagnosed the case as one of "traumatic appendicitis," basing his diagnosis on the swelling which he saw and the history of the case which he had had from some one— the patient or some one else—indicating the receipt of a recent blow at the exact place over the appendix where the swelling was located. These would be indicia quite sufficient to induce a careful physician to make such a diagnosis.

Under these circumstances we are satisfied that it was not error to refuse the offer in evidence of Exhibit 3 with the particular question and answer stricken out.

Judgment affirmed.