KINGSLAND, RESPONDENT, v. METROPOLITAN LIFE IN-SURANCE CO., APPELLANT.

(No. 7,269.)

(Submitted September 29, 1934. Decided October 17, 1934.)

[37 Pac. (2d) 335.]

560

*Messrs. Belden & DeKalb,* for Appellant, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

*Mr. E. K. Cheadle* and *Mr. C. E. Baker,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Metropolitan Life Insurance Company, has appealed from a judgment against it and in favor of Christina

Kingsland, beneficiary under two policies of life insurance issued to her husband, Alvin Kingsland, deceased.

The policies which form the basis of the judgment were originally straight life insurance policies, but in 1929, prior to the death of the insured, the company added to all such policies a rider supplementing the benefits thereof as follows:

"Upon receipt of due proof that the insured * * * has sustained * * * bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in death of the insured within ninety days, * * * the Company will pay in addition * * * an Accidental Death Benefit equal to the face amount of insurance then payable at death." It is further declared that this payment will not be made "if death is caused or contributed to directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity."

Among other activities, Kingsland took care of the furnace in the Judith Theater at Lewistown. On August 20, 1931, while in apparent good health, although some three months prior thereto he had consulted a physician for heart trouble, the insured mounted a chair set on the uneven, rough concrete floor of the furnace room in the theater in order to adjust two pet-cocks, high overhead; to get at the second of these he had to reach around the boiler, and, while doing so, the chair rocked; he lost his balance and catching his foot in the chair, fell in such manner that he struck head-first on the rough cement. His only movement after striking the floor was to turn over on his back; he sustained lacerations and bruises on his head; shortly his face darkened and he died. The company paid the life insurance but refused to pay the accident benefits, and plaintiff brought action to recover this additional amount.

The complaint describes the accident and alleges that Kingsland died from injuries received by accidental means which "were within the provisions, terms and conditions" of the policy, but that the plaintiff was unable to plead the policies more explicitly, inasmuch as they had been delivered to the

company and it refused to redeliver them or furnish plaintiff with copies thereof. It further alleges compliance with the policies by furnishing proof of loss which conformed to the requirements of the policies.

The defendant answered, setting up the rider to the policies and alleging that "assuming that the pleading of the plaintiff" brought her into a position to claim "that she had negatived the terms of the rider," denied that the death of Kingsland "was not caused or contributed to directly or indirectly, or wholly or partially, by disease." The answer further alleged that the proof of loss shows no liability on the part of the defendant, in that it affirmatively showed: "Cause of death, Ruptured Aneurism of Aorta, precipitated by fall striking head on cement floor. Contributory or secondary: fall striking head on cement floor."

In her reply the plaintiff alleged that if the proof of loss contains the quoted statements, "said proof of loss does not truly state the facts pertaining to the cause of death."

On the trial the facts were not in dispute, and the record of the evidence consists chiefly of the examination and cross-examination of doctors on hypothetical questions relative to the cause of death.

At the opening of the trial defendant objected to the introduction of evidence, on the ground that the complaint fails to state facts sufficient to constitute a cause of action. At the close of plaintiff's case, defendant moved for a nonsuit on the grounds that the plaintiff had not shown that proofs of loss were furnished showing that death occurred under circumstances casting liability on it; that it was not shown that the proofs furnished were incorrect, but, on the contrary, they were true and disclosed nonliability; that the plaintiff showed that the primary cause of death was the ruptured aneurism. In each instance the court ruled against the defendant.

The court submitted interrogatories to the jury; the second of these is: "Was the death of Alvin Kingsland caused or contributed to, directly or indirectly or wholly or partially, by disease, or by bodily infirmity, namely, a ruptured blood

vessel?" The jury answered this question in the negative, and returned a verdict for the plaintiff which was followed by the judgment from which this appeal is taken.

The specifications made are that the court erred in overruling defendant's objection to the introduction of testimony and its motion for nonsuit, and that the evidence is wholly insufficient to sustain the verdict and judgment.

Under the first specification it is argued that the complaint ▇ did not state a cause of action because the proof of loss filed showed nonliability instead of liability. If the proof so shows, that fact would not avail the defendant on its objection to the introduction of evidence, for it did not appear in the complaint challenged. The complaint does not set up the proof of loss, but alleges its sufficiency and avers that the plaintiff is illiterate and relied solely upon the company and its agent in the preparation of her proofs, which were prepared by the agent and under his direction and merely signed by her and delivered to the company, and upon the assurance made to her at the time that the proofs made were sufficient proofs under the policies. The objection went only to the sufficiency of the complaint, and, with the explanation therein as to plaintiff's failure more definitely to plead facts showing liability, coupled with the allegation of the ultimate fact of compliance with the requirements of the policies in this regard and the sufficiency of the proof submitted, the pleading was not open to the attack made upon it.

In this connection counsel for the defendant concede that one ▇▇ may challenge his own proof of loss on the ground of mistake, fraud, neglect or inadvertence, but assert that an action "without pleading or proof" of such challenge is premature. Again, the complaint challenged does not show this condition. The complaint states the facts within the knowledge of the plaintiff; this was met by the answer challenging the sufficiency of the proof of loss. By reply the plaintiff, lacking knowledge of the contents of the proofs of loss, alleged that, if they contain the matter alleged to show nonliability, they "do not truly state the facts." Argument as to whether or

not she produced evidence to support this allegation does not properly come under the first specification, but will be considered in connection with the remaining specifications of error, which raise only the question of the sufficiency of the evidence, relating to the cause of death, to warrant submission to the jury and to sustain the verdict and judgment.

Before analyzing the evidence it will be well to determine the exact nature of the benefit afforded policy-holders by the rider attached to their policies, and the conditions under which their beneficiaries were promised the double payment.

The rider was voluntarily added to the policies by the insurer and became a part of its contract to pay, in consideration of the fixed premium received. There was no requirement of further medical examination or proof that the insured was then free from disease or bodily infirmity. The insurance took effect as of the date thereof, regardless of the insured's physical condition at the time, and regardless of disease or bodily infirmity thereafter developed. The only condition precedent to the attaching of liability was that death be shown to have resulted "solely through external, violent and accidental means." Under the provisions of this rider, an insured might have been at the point of death from cancer, tuberculosis or heart disease, but if death ensued from lightning stroke, accidental gunshot wound, or other external, accidental means alone, liability followed.

Thus, by the contract of the parties which we are called upon to interpret and enforce, a reasonable scope of insurance is contemplated, but by clear and unequivocal language it is likewise contemplated "that the insured might suffer an accident resulting in death, to which disease or bodily infirmity contributed indirectly or partially; and, if so, such death was within the exception." (*Sullivan* v. *Metropolitan Life Ins. Co.*, 96 Mont. 254, 29 Pac. (2d) 1046.) There is some reference in the *Sullivan Case* to the rule of "proximate cause," based upon a quotation from a Massachusetts case (*Freeman* v. *Mercantile Mutual Acc. Assn.*, 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753), but a careful reading of the

Sullivan decision will disclose that it is not based upon that rule, but rather the determination that the evidence disclosed that Sullivan's fall, alone, would not have produced death, and consequently his disease contributed to cause death, bringing the case within the exception declared in the contract.

The term "proximate cause" is inapt in this class of cases; under the parties' express contract a recovery can be had only if death resulted "solely" (not proximately) from injuries received through accidental means, and if the insured's condition was a *contributing* cause, there can be no recovery. (*Ackerman* v. *Minnesota Commercial Men's Assn.*, 184 Minn. 522, 239 N. W. 229; *National Association of Railway Postal Clerks* v. *Scott*, 155 Fed. 92, 83 C. C. A. 652; *Binder* v. *National Masonic Acc. Assn.*, 127 Iowa, 25, 102 N. W. 190; *Maryland Casualty Co.* v. *Morrow*, 213 Fed. 599, 130 C. C. A. 179, 52 L. R. A. (n. s.) 1213.) The doctrine of proximate cause is applicable, in this class of cases, and was applied in the *Sullivan Case*, "only to aid in determining whether or not the loss was caused solely by the accident or act against which the indemnity was given." (45 C. J. 900.)

While it is held in the *Sullivan Case* that "if there is no active disease but merely a frail condition, * * * or merely a tendency to disease which is started up and made operative resulting in death, then there may be a recovery, even though the accident would not have caused that effect upon a healthy person in a normal state (*Leland* v. *Order of United Commercial Travelers*, 233 Mass. 558, 124 N. E. 517; 5 Couch on Insurance, p. 4009)," where the existence of a disease is shown, such as that with which Sullivan was suffering at the time of his fall, it is held that there can be no recovery "unless the accidental injury was sufficient in itself to cause death to a healthy man." (*Commercial Travelers' Mut. Acc. Assn.* v. *Fulton*, 79 Fed. 423, 24 C. C. A. 654, 45 U. S. App. 578.) In the *Sullivan Case* it clearly appeared that the fall alone was not sufficient to cause death, and therefore his condition was a contributing cause. The decision,

therefore, is not controlling here unless the proof brings the case within the rules therein and heretofore announced.

Here the doctors called by the plaintiff testified that such a fall as Kingsland was subjected to was sufficient to cause death, and, in answer to hypothetical questions which assumed that the insured was a healthy man, gave their opinions that the cause of death was "the fall." However, it was explained that, in order to cause death, such a fall would result in fracture of the skull, concussion of the brain or the bursting of a blood vessel in the brain, and that, in order to determine whether or not these injuries, or any of them, were suffered, the expert would have "to go in there," open the skull and examine the brain.

As to this phase of the case a peculiar situation was developed. After the death of Kingsland the coroner of Fergus county, Doctor Wilder, took charge of the body and called Doctor Deal to assist him in an autopsy. The doctors knew of the accident and observed a cut, bruises and abrasions on the head, but made no examination to discover the extent of the head injury; instead, for reasons undisclosed, they opened the chest and found an aneurism of the aorta which had ruptured. Their report was made a part of the coroner's report, and from it Doctor Wallen, the Kingsland family physician, without personal knowledge of the facts, stated the "cause of death" in the "proof of death," filed with the insurer, as above. Wallen was one of the doctors who testified that the fall, sustained in the manner described, was sufficient to have caused death.

Doctor Deal was ill at the time of the trial and his testimony on the coroner's inquest was introduced. Doctor Wilder, the coroner, was called by the defendant; he testified that the rupture of the aneurism, with resulting hemorrhage, would cause death, and in answer to the question whether it was his opinion that the aneurism "contributed, directly or indirectly, or wholly or partially, to the death," replied, "It did." On cross-examination Doctor Wilder admitted, "I don't

know whether or not his skull was fractured. We did not examine his neck to see whether or not it was broken," and that such a fall "might kill a person." On redirect the doctor testified that if the aneurism had ruptured while the insured was on the chair, it would have caused him to fall; but on recross he stated that, in view of testimony, this could not have been the fact. On redirect the coroner stated that he and Doctor Deal did examine the head for a skull fracture, but on recross testified that they tried to do so through the cut in the scalp but that it was not sufficiently large for the purpose.

The case differs from that presented in the *Sullivan Case,* above, in that no one of the experts presumed to say that he knew the cause of death, but each testified that the fall alone was sufficient to cause death; that the rupture of the aneurism was sufficient to cause death, and, in effect, that if the fall was not sufficient, but did cause the rupture which in turn caused death, the latter was a contributing cause of death.

A court is not justified in taking a case from the jury merely because witnesses for the plaintiff may have made contradictory statements as to the cause of results established, nor because experts testify that an accident could not have been caused as contended by the plaintiff. (*Davis* v. *Atchison, T., & S. F. Ry. Co.,* 104 Kan. 604, 180 Pac. 195.)

In the case of *Jaques* v. *Order of United Commercial Travelers,* 104 Kan. 612, 180 Pac. 200, the insured held a policy similar to the one before us; he fell downstairs, injured his head and died within a month; he was found to have had hardening of the cerebral artery. Surgical experts testified that this artery clogged and consequently a portion of the brain became inactive, which caused the death rather than the fall. The court said: "Not all of the expert evidence was to that effect, however; one expert was of opinion that the fall might have partly caused the maladies; * * * . Be that as it may, although expert opinion evidence * * *

must be conscientiously considered and weighed by the jury, such evidence cannot be judicially held to annihilate the simple concrete evidence of other facts and circumstances which tended so strongly to show that Jaques' death was caused by his falling down the stairway. The credence and weight to be given to expert and opinion evidence was for the jury's determination." (See, also, *Moffett* v. *Bozeman Canning Co.,* 95 Mont. 347, 26 Pac. (2d) 973.)

Inasmuch as the record contains evidence to the effect that the fall was in itself sufficient to cause the death of a healthy man, and direct statements that the cause of death was "the fall," the evidence to the contrary but created a conflict, to be determined by the jury. The evidence sufficiently shows inadvertence in the drafting of the proofs of loss to excuse its filing, containing, as it does, facts other than those showing the "facts" as to the cause of death from plaintiff's point of view. That the cause of death brought the case within the exception stated in the policies, is a matter of defense, to be pleaded by the insurer in its answer. (*Sullivan* v. *Metropolitan Life Ins. Co.,* above.)

It follows that the court did not err in overruling defendant's demurrer; that the cause was properly submitted to the jury, and, as there is substantial evidence in the record to support the verdict, the judgment cannot be disturbed.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE ANGSTMAN not sitting.