No. 81-257

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

LIFE INSURANCE COMPANY OF NORTH
AMERICA,

                Petitioner and Appellant,

    -vs-

JUDITH ANN EVANS, individually and as
Personal Representative of the Estate
of LORENZO LLOYD EVANS, Deceased.,

                Respondent and Respondent.

_____

ORIGINAL PROCEEDING:

Counsel of Record:

    For Appellant:

        Anderson, Brown, Gerbase, Cebull & Jones, Billings,
        Montana

    For Respondent:

        Douglas & Bostock, Libby, Montana

_____

                Submitted on Briefs: July 2, 1981

                      Decided: November 6, 1981

Filed:   NOV 6 - 1981

_Thomas J. Kearney_
                Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Honorable Russell E. Smith , a senior United States District Judge for the District of Montana, has certified to us a question of law in which it appears there are substantial grounds for difference of opinion, the adjudication of which by this Court would materially advance a decision in federal litigation. The following questions were certified:

Are the decisions of law set down in Kingsland v. Metropolitan Life Insurance Co. (1934), 97 Mont. 558, 37 P.2d 335, and Sullivan v. Metropolitan Life Insurance Co. (1934), 96 Mont. 254, 29 P.2d 1046, still law in Montana?

If the Kingsland and Sullivan cases still state the law in Montana, are the differences in the language of the "exclusions" clauses sufficient to distinguish the policy involved here from those considered in Kingsland and Sullivan?

Lorenzo Lloyd Evans lived at an isolated location, known as "Copper Creek," fifty miles from Libby, Montana, and twelve miles from Noxon, Montana. He was a lawyer, admitted to practice in Montana, with offices in Libby. Evans kept various wild animals and birds at his place on Copper Creek, including an eleven-year-old wolf which he had raised from a pup. On the morning of June 27, 1979, Lloyd Evans was feeding his wolf when the wolf attacked and bit him on his right hand and wrist. Evans went back to the house, wrapped his hand with a towel, and sat down.

Within a period of approximately eight to fifteen minutes after the wolf attack, Evans indicated to his wife that the bite had precipitated a heart attack and that he should be driven to a hospital right away. Evans walked to

-2-

his car and laid down in the backseat. His wife had called an ambulance, and when they had traveled a little over half of the distance to Libby, they met the ambulance on the highway. Evans was transferred to the ambulance where oxygen was administered to him, and his pulse was monitored. While in the ambulance, and after a lapse of approximately forty-five to sixty minutes following the wolf attack, Evans' pulse stopped, and he went into cardiac arrest. Oxygen and C.P.R. were administered, and Evans showed some signs of life when the ambulance arrived at the hospital emergency room in Libby. Approximately fifteen minutes after arrival at the hospital, Lloyd Evans died.

Lloyd Evans had previously suffered a heart attack on April 4, 1979. He was hospitalized at the Veteran's Administration hospital in Spokane, Washington, for about three weeks. On April 25, 1979, he was given a regular discharge and returned to the care of his physician, with the recommendation that he be in house rest for another six weeks and gradually resume his prehospital activities.

Medical evidence indicates that the immediate cause of Lloyd Evans' death was heart attack, but that the heart attack was "triggered" by the wolf bite. The wolf bite was not severe enough, by itself, to have caused the death of Evans.

Lloyd Evans had applied for, and Life Insurance Company of North America had issued, a certain group voluntary accidental death and dismemberment insurance policy, No. OK-2598, in the principal sum of $50,000, effective November 1, 1972. The policy was in full force and effect, according to its terms, on the date of Lloyd

Evans' death. The policy contained this language:

> "[The insured] is insured . . . against loss <u>resulting directly and independently of all other causes</u> from bodily injuries caused by accident occurring while the policy is in force as to the Insured, herein called such injuries.
>
> ". . .

"EXCLUSIONS

> "The policy does not cover loss <u>caused by or resulting from</u> any one or more of the following:
>
> ". . .
>
> "(D) <u>Illness, disease</u> . . . <u>bodily infirmity</u> or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound." (Emphasis supplied.)

The issue here is whether Kingsland v. Metropolitan Life Insurance Co. (1934), 97 Mont. 558, 37 P.2d 335, and Sullivan v. Metropolitan Life Insurance Co. (1934), 96 Mont. 254, 29 P.2d 1046, are still law in the State of Montana. After a review of the rules in these cases, we agree with respondent Judith Evans that the reasoning and rules set down in <u>Sullivan</u> and <u>Kingsland</u> are strict and harsh.

In <u>Sullivan</u>, the insured tripped over a piece of sheet metal and fell, hitting his head. Five days later he died of a cerebral hemorrhage. Evidence was submitted at the trial that the insured was suffering from high blood pressure and arteriosclerosis at the time of the fall. Evidence also indicated that had a man not suffering from high blood pressure and arteriosclerosis tripped over the sheet metal, in all probability, no hemorrhage would have resulted.

The insurance policy in <u>Sullivan</u> provided coverage if the insured sustained "bodily injuries, solely through

external violent and accidental means, resulting directly and independently of all other causes." The Court in Sullivan admitted that a reasonable scope of insurance was contemplated by the policy. Nevertheless, because of the clear and unequivocal nature of this language in the policy, the Court held that there would be no recovery if ". . . the insured might suffer an accident resulting in death to which disease or bodily infirmity contributed indirectly or partially . . ." Sullivan, 29 P.2d at 1052. Because the insured was suffering from arteriosclerosis, which contributed to and actively cooperated with the accident to cause the insured's death, there was no recovery.

In Kingsland, the insured had stepped onto a chair sitting on an uneven cement surface; he lost his balance and fell head first on the rough cement. The insured died shortly after the fall. The cause of the insured's death was described as a ruptured aneurysm of the aorta, precipitated by the fall and by striking his head on the cement floor.

The Court in Kingsland first looked to the language of the insurance policy which contained the condition that death must be shown to result "solely through external, violent and accidental means." Kingsland, 37 P.2d at 337. The Court then reasoned that the term "proximate cause" is inapt in this class of cases because "recovery can be had only if death resulted 'solely' (not proximately) from injuries received through accidental means . . ." Kingsland, 37 P.2d at 337. According to the Court in Kingsland, there could be no recovery if the insured's condition was a contributing cause of death. If a pre-

existing infirmity were shown, recovery could only be had if the accidental injury was sufficient in itself to cause the death of a healthy man.

The Kingsland Court reasoned further that in Sullivan the fall alone was not sufficient to cause the insured's death, and his condition was therefore a contributing cause. In contrast, because evidence showed that the fall of the insured in Kingsland was sufficient to cause the death of the insured, recovery was granted.

The issue here is whether this Court should still follow the rule set down in Kingsland and Sullivan that if a preexisting condition contributes to an insured's death, there can be no recovery. Given the extreme harshness of this rule and the liberal interpretation placed on such insurance policies in many jurisdictions today, we must overrule the Kingsland and Sullivan cases to the extent that they hold that there can be no recovery if a preexisting disease either directly or indirectly contributes to an insured's death.

We are persuaded that the better rule for the interpretation of such insurance policies is the following: Where an accidental injury aggravates or triggers a preexisting dormant disease or physical infirmity, the accident may be said to have been the proximate cause of the resulting disability within the terms and meaning of an ordinary accident insurance policy. See, Boring v. Haynes (1972), 209 Kan. 413, 496 P.2d 1385; Carlson v. New York Life Insurance (1966), 76 Ill.App.2d 187, 222 N.E.2d 363; McMackin v. Great American Reserve Ins. Co. (1971), 22 Cal.App.3d 428, 99 Cal.Rptr. 227; Nash v. Prudential Ins.

Co. of America (1974), 39 Cal.App.3d 594, 114 Cal.Rptr. 299; Brown v. State Mutual Life Insurance Company of America (La.App. 1979), 377 So.2d 355; Zurich Ins. Co. v. Ruscoe (Miss. 1967), 203 So.2d 305; Couey v. National Benefit Life Insurance Company (1967), 77 N.M. 512, 424 P.2d 793. For a discussion of cases on this matter, see 84 A.L.R.2d 176.

The mere presence of a preexisting disease or infirmity will no longer relieve the insurer from liability in this state. Recovery may be had even though the disease appears to have actually contributed to the cause of death as long as the accident sets in motion the chain of events leading to death, or if it is the prime or moving cause. See, Brooks v. Metropolitan Life Ins. Co. (1945), 27 Cal.2d 305, 163 P.2d 689; Kater v. United Insurance Company of America (1960), 22 Ill.App.2d 22, 165 N.E.2d 74.

A mere frail condition should not relieve an insurer from liability. As Chief Justice Cardozo noted in Silverstein v. Metropolitan Life Co. (1930), 254 N.Y. 81, 171 N.E. 914, an insurance policy is not accepted with the thought that its coverage is to be restricted to an Appollo or a Hercules.

We agree with the following language from Couey v. National Benefit Life Insurance Company, supra, 424 P.2d at 795:

> "In our view of the case, every injury or disease suffered by a person from his birth to the date of a particular injury contributes to some degree to the condition then present. Necessarily, by the words used in the policy it could not have been intended that payment would be due only when the accident was literally the sole cause of hospitalization. If a person had suffered a broken leg which had healed perfectly five years before, and a second accident wherein the leg had broken at the same place, could

> it be said that the condition resulting from
> the first break did not in any way contribute
> to the second break?  We think the answer is
> obvious and, under defendants' theory, plain-
> tiff would not be entitled to recover.  In our
> view, this application of the language of the
> policy is entirely too restrictive and would
> be unreasonable.  Other courts have agreed . . ."

Likewise, the rulings of Sullivan and Kingsland were too restrictive, and any rules in these cases must be overruled to the extent they are inconsistent with this opinion.

Since we have held that Kingsland and Sullivan no longer state the law in Montana, we need not discuss the second question certified to us.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-