HENRIETTA N. WHITE v. STANDARD LIFE & ACCIDENT INSURANCE
COMPANY.[1]

June 2, 1905.

Nos. 14,267—(102).

**Accident Insurance.**

An accident insurance policy provided that the insurer should be liable for injuries or death caused solely by accidental means, and expressly exempted the insurer from liability if death resulted wholly or in part, directly or indirectly, from any bodily disease or infirmity of the insured.

**Disease Concurrent Cause.**

The evidence in this case shows that at the time the policy was issued, and at the time of the insured's death, which was claimed to have been the proximate result of an accidental injury, he was affected with diabetes, and the evidence is conclusive that such disease directly co-operated with the injury in causing death. *Held*, that the insurer was not liable.

Action in the district court for Ramsey county to recover $2,000 and interest upon an accident insurance policy issued to Lewis E. Pixley, with loss, in case of his death, payable to plaintiff. The case was tried before Jaggard, J., who directed a verdict in favor of plaintiff for the sum demanded, upon the close of the testimony. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. On rehearing, reversed and new trial granted.

*E. A. Prendergast* and *Cobb & Wheelwright*, for appellant.
*Henry W. Williams* and *Walter A. Shumaker*, for respondent.

[1] Reported in 103 N. W. 735, 884.

BROWN, J.[2]

Action to recover upon an accident insurance policy, in which plaintiff had a verdict in the court below, and defendant appealed from an order denying its alternative motion for judgment nothwithstanding the verdict, or for a new trial.

The facts are as follows: Lewis E. Pixley on December 6, 1900, made written application to defendant for an accident insurance policy, in which he appears to have represented to the company that he was not then suffering from any bodily disease or infirmity. He was in fact afflicted with diabetes, and so expressly informed the agent of defendant who solicited, and to whom the application was delivered. The agent stated to Pixley at the time the application was made that the fact that he was suffering from diabetes was unimportant, and he (the agent) failed to record the fact in the application. A policy was subsequently issued by the company upon the application so made, for which Pixley paid the premium demanded. Thereafter, on December 6, 1901, at the expiration of the period covered by the policy, defendant renewed the same, but without requiring a new application; the renewal policy being issued at the instance of Pixley and plaintiff, who was then the local agent of defendant, upon the daily report of the agent to whom the original application had been made. On October 26, 1902, during the life of the renewal policy, Pixley received an injury to one of his thumbs, as the result of an accident, and died within ten days thereafter. This action was brought by plaintiff, beneficiary in the policy, on the claim and contention that the injury to Pixley was the direct and proximate cause of his death, and that the policy covered a death so caused. At the trial in the court below, both parties requested an instructed verdict. Plaintiff's request was granted upon the theory that there were no issues for the jury to pass upon.

It is contended by defendant on this appeal that, on the undisputed evidence shown in the record, plaintiff is not entitled to recover, and that the court below should have directed a verdict in its favor. This contention is based upon two grounds: (1) False representations and statements alleged to have been made by Pixley in his application for insurance; and (2) that defendant is not liable under the

[2] Jaggard, J., having tried the case in the court below, took no part.

policy because it appears conclusively that the death of Pixley was due in part to diabetes, a bodily infirmity existing when the policy was issued, and at the time of the accident and injury—a condition from which the policy exempts defendant from liability.

The first point was decided adversely to defendant in the case of Whitney v. National Masonic Accident Assn., 57 Minn. 472, 59 N W. 943. It appears in this case, as it appeared in that one, that, though the insured was afflicted with a bodily infirmity and disease at the time his application was made, he expressly informed the agent of the insurance company of the fact, and there is no intimation in the record of any fraud or attempted concealment of the information from the insurance company on the part of the insured. The company is therefore liable if the death of Pixley comes within the terms and conditions of the policy, and we pass to that question without further remark on the subject of alleged false or fraudulent statements.

The policy, among other things, provided as follows:

> The Standard Life & Accident Insurance Co. * * * hereby insures Lewis E. Pixley * * * against loss of time resulting from bodily injuries caused solely * * * by external, violent and accidental means * * * (5) If death results solely from such injuries as the proximate cause thereof within ninety days, the said company will pay the principal sum of two thousand dollars to Henrietta N. White, his sister, if living * * * (8) This insurance does not cover disappearance * * * nor in event of accident or death * * * resulting wholly or partly, directly or indirectly from bodily or mental infirmity, or disorder, or disease in any form.

While the rule is thoroughly settled that policies of this and like character are to be construed liberally, and that ambiguous provisions or those capable of two constructions should be construed favorably to the insured and most strongly against the insurer, plain, explicit language cannot be disregarded, nor an interpretation given the policy at variance with the clearly disclosed intent of the parties. Taking the policy in the case at bar by its four corners, it will admit of but one construction. It provides, in language quite plain, that the company

insures against injury or death from accidental causes, except where death results "wholly or partly, directly or indirectly," from some bodily disease or infirmity. Similar policies have been before both the state and federal courts, and the consensus of judicial opinion is that, subject to the exceptions contained in the policy, if the injury be the proximate cause of death, the company is liable, but, if an injury and an existing bodily disease or infirmity concur and co-operate to that end, no liability exists. If, however, the injury be the cause of the infirmity or disease—if the disease results and springs from the injury —the company is liable, though both co-operate in causing death. The distinction made in this particular is found in that class of cases where the infirmity or disease existed in the insured at the time of the injury, and, on the other hand, that class of cases where the disease was caused and brought about by the injury. And even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists. The rule of proximate cause, as applied to actions of negligence, cannot be applied in its full scope to contracts of this nature. 1 Cyc. 273.

But for the express reservation contained in this policy, the injury here complained of would, applying the ordinary rule of proximate cause, very properly be held the direct and primary cause of Pixley's death; but the fact that he was afflicted with diabetes at the time, which was aggravated by the injury and contributed to his death, removes the case from that rule, and brings it within the exceptions of the policy. 1 Cyc. 262; Freeman v. Mercantile Mut. Acc., 156 Mass. 351, 30 N. E. 1013.

The rule is clearly stated by Judge Sanborn in National Masonic Acc. Assn. v. Shryock, 73 Fed. 774, 20 C. C. A. 3, as follows: "The burden of proof was upon the defendant in error to establish the facts that William B. Shryock sustained an accident, and that that accident was the sole cause of his death, independently of all other causes. If Shryock suffered such an accident, and his death was caused by that alone, the association agreed, by this certificate, to pay the promised indemnity. But if he was affected with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an

accident, but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor." The decision in that case was followed and applied in Commercial Travelers' Mut. Acc. Assn. v. Fulton, 79 Fed. 423, 24 C. C. A. 654. See also Maryland v. Glass, 29 Tex. Civ. App. 159, 67 S. W. 1062; U. S. Mut. Acc. Assn. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755; Smith v. Accident, L. R. 5 Exch. 302; National v. Grauman, 107 Ind. 288, 7 N. E. 233.

We do not understand from the reported decision that the Supreme Court of Nebraska, in Modern Woodmen v. Shryock, 54 Neb. 250, 74 N. W. 607, differed from the federal court in National Masonic Acc. Assn. v. Shryock, supra—both cases involving the same accident, though under different policies—respecting the construction of the contract or the rules of law applicable thereto. The Nebraska court declined to follow the federal court in so far as it held that the death there complained of was not caused solely by the accident, holding that the question was one of fact for the jury to determine. We have found no case at variance with the rule laid down by the foregoing authorities. Where a seeming variance appears, it will be found on examination to be upon the question whether the accident was the sole cause of the death of the insured, or whether that question was one of fact for a jury. Such are the cases relied upon by plaintiff in the case at bar.

In Fetter v. Fidelity, 174 Mo. 256, 73 S. W. 592, the court held that the fact that an accident ruptured a kidney because of its cancerous condition did not prevent the accident from being the sole cause of the ensuing death of the insured, "independent of all other causes," within the meaning of the policy. It did not appear in that case that the diseased condition of the kidney contributed in any degree to cause death. The trial court instructed the jury in that case that a verdict for plaintiff could not be returned unless they found that the accident "was

95 M.—6

the sole and only direct cause of death." The Supreme Court upheld this instruction.

In Freeman v. Mercantile Mut. Acc. Assn., supra, it appeared that the insured died from peritonitis, and the question presented was whether an accidental injury was the proximate cause of his death. The terms of the policy were similar to those in the case at bar— exempting the company from liability where death resulted partly from disease or bodily infirmity. The trial court charged the jury that the question whether peritonitis, if that caused the death of the insured, was the proximate cause thereof, within the meaning of the policy, such as to prevent a recovery, depended upon the question whether or not before and at the time of the accident he was suffering from that disease; that, if he was, then, within the meaning of the policy, although aggravated and made fatal by the accident, no recovery could be had, but if, owing to existing lesions caused by the disease, but not having the disease at the time, the same kind of "malady was started up," and resulted fatally, the company was liable. The Supreme Court sustained the instructions, saying that the trial court thereby interpreted the policy in accordance with the intent of the parties. The case was disposed of adversely to the insurance company on the theory that the injury caused the disease which terminated in the death of the insured; expressly holding that if the disease existed at the time the injury was received, and co-operated to cause death, no recovery could be had.

The case of Continental v. Lloyd (Ind. Sup.) 73 N. E. 824, does not sustain plaintiff's contention. In that case it appeared that the insured died from cerebral hemorrhages, and the pivotal issue of fact was whether the condition was brought on and caused by the injury complained of, or by the previous physical condition of the insured. The court held that on the evidence the question was one for the jury to determine. The court did not hold that, if the injury and the previous physical condition of the insured co-operated to cause death, the company was liable, but simply that the question whether the injury was the efficient and direct cause of death was one of fact, and that the verdict of the jury that it was so caused was sustained. The case of Whitney v. National Masonic Accident Assn., 57 Minn. 472, 59 N. W. 943, is not in point. The question here under consider-

ation was not presented or decided in that case. The sole question there passed upon was whether the insured was bound by false statements as to his physical condition inserted in his application by the agent of the company without his knowledge or connivance.

The rule laid down by the authorities referred to is unquestionably in full accord with the terms of the policy here involved, and must be followed and applied. No other view can be taken, consistently with the language of the policy, and the clear intention of the parties as there expressed. Nor is the rule in any way affected or changed by the fact that the insurer was informed at the time the policy was issued of the existence of the bodily infirmity. In such case the insurer contracts to indemnify the insured from accidental injury, knowing the existence of his bodily infirmity, but with the reservation and exception that the insurer will not be liable if such infirmity directly or indirectly co-operate with an accidental injury in causing death. It follows that if the diabetes with which Pixley was afflicted at the time of the accident contributed, with the injury, to cause his death, defendant is not liable on the policy. That it did, the evidence leaves no room for reasonable doubt. The physician called by plaintiff to testify concerning the cause of death made an effort to attribute it to the injury; but his whole testimony makes it clear from his own point of view that diabetes co-operated with the injury, and not only indirectly, but directly, contributed to the fatal result. The accident complained of resulted in a broken thumb—clearly not such an injury as would "solely and independently of all other causes" result in death; and this physician testified to the effect that the diabetes with which Pixley was afflicted was aggravated, and co-operated with the injury to cause his death. The physician attending Pixley after the accident testified pointedly that Pixley's death resulted from diabetes, and the only fair inference from the testimony of the physician called by plaintiff, who did not examine the injury, but based his opinion upon information given him concerning it, is that the injury aggravated the diabetic condition, and induced and brought on what he termed "diabetic coma."

In view of the conceded facts in the case, it is clear that no new evidence can be produced to change the situation respecting the cause of Pixley's death, and judgment must be ordered for defendant. If a new trial were granted, and the case returned here on the same, or

substantially the same, evidence—and we cannot conceive of a truthful change in point of substance—we would be required to order judgment for defendant. In view of this, it would be unjust to both parties to prolong the litigation.

It is therefore ordered that the order appealed from be, and it is hereby, reversed, and the court below ordered to enter judgment for defendant.

On June 16, 1905, the following opinion was filed:

PER CURIAM.

Further reflection on application for a rehearing, satisfies us that this is not, perhaps, a case where final judgment should be ordered, within the rule laid down in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958; and the order heretofore made will be, and is hereby, modified by directing a new trial of the action.