[No. 14874.    Department Two.    January 2, 1919.]

FAWKNER, CURRIE & COMPANY, INCORPORATED, *Appellant*, v. RIO NEGRO SHIPPING COMPANY *et al., Respondents.*[1]

BROKERS (16, 20, 33)—COMMISSIONS—PROCURING CAUSE—EVIDENCE —SUFFICIENCY. The evidence supports findings that a broker failed to earn commissions for the sale of a ship, where the preponderance is to the effect that after his purchaser had refused to complete the purchase at $13,000, and negotiations had been broken off, the captain employed another broker who effected a sale to the same purchaser obtaining a price of $15,000 and paying the other broker a $2,000 commission (HOLCOMB, J., dissenting).

Appeal from a judgment of the superior court for King county, Jurey, J., entered January 11, 1918, upon findings in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*Dudley G. Wooten,* for appellant.

*John A. Soule* and *Edward Judd,* for respondents.

MOUNT, J.—This action was brought to recover a commission of $650 for the sale of a ship. The complaint alleges in substance that, on or about January,

[1]Reported in 177 Pac. 339.

1917, the defendant company entered into a contract with the plaintiff as selling broker, by which defendant agreed to pay five per cent commission on the sale price of the ship ''Fortuna,'' owned by the defendant. That plaintiff performed its part of the contract, sold the ship, which was at the time in Pimentel, Peru, for the agreed price of $13,000, and thereby earned its commission. The defendant denied generally the allegations of the complaint. On these issues, the case was tried to the court without a jury. At the conclusion of the evidence, the court found, in substance, that the plaintiff did not sell the ship; that it was sold by the captain for the sum of $15,000; that a broker employed by the captain to make the sale was paid a commission of $2,000; and that the sale by the captain was an independent sale, after negotiations which had been entered into between the plaintiff and Comyn, Mackall & Company, of Peru, had been broken off. Upon these findings, the court entered a judgment in favor of the defendants. The plaintiff has appealed.

The correctness of this judgment depends entirely upon a question of fact. It is argued by counsel for appellant that the evidence shows appellant was the moving cause of the sale and is therefore entitled to a commission. The trial court found that the appellant was not the moving cause of the sale; that the sale was not made by or through appellant, but was finally made after the purchaser which appellant had procured had refused to purchase the ship upon the terms offered, and that the captain of the vessel thereafter, upon instructions from the owners, made an independent sale of the vessel.

There are some circumstances in the case favorable to the appellant, but the weight of the evidence is to the effect that the appellant was authorized to sell the

vessel for $13,000, upon a contract contained in a letter from the owners to the appellant as follows:

"We will sell the American Schooner Fortuna . . . to Comyn, Mackall & Co., or any person designated by them, for $13,000 cash. Delivery to be made at Pimentel, Peru, after the discharge of the present cargo . . . Out of the price we will pay a selling commission of five per cent."

It appears that, at the time this letter was written by the respondents to appellant, the vessel was on her voyage from Seattle, in this state, to Pimentel, Peru. When the vessel arrived at Pimentel, Comyn, Mackall & Company, to whom the vessel was to be sold, sent a message to the owners in Seattle to the effect that they would not accept the vessel without a new mainmast and without some dories and the chronometer on the vessel. The owners refused to furnish these items. Thereafter Comyn, Mackall & Company notified the owners that they would not take the vessel. Thereafter the owners of the vessel sent a message to the captain asking him to sell the vessel or return her to her home port. The captain thereupon employed a broker to make the sale. This broker sold the vessel to the same person to whom Comyn, Mackall & Company were endeavoring to sell. The captain obtained a price of $15,000, and paid the broker who made the sale $2,000 commission. This is the substance of the evidence offered in behalf of respondents on the trial. The trial court apparently believed this evidence and concluded that the sale made by the captain through the broker whom he had secured was entirely independent of the sale which the owners had authorized the appellant to make, and, for that reason, found in favor of the respondents and entered judgment accordingly. We think there can be no doubt that the weight of the evidence was as found by the trial court.

There was clearly sufficient evidence to support the findings made.

The judgment must therefore be affirmed.

MAIN, C. J., PARKER, and FULLERTON, JJ., concur.

HOLCOMB, J. (dissenting)—Reluctantly, I am compelled to dissent from the foregoing decision, upon the facts.

To me, the facts preponderate in favor of appellant, and in such case it is our statutory duty not to be bound by the findings and judgment of the trial court.

There is no conflict that appellant found a purchaser upon the terms required by the seller. After the sale, and when the ship was about to be delivered to the purchaser, the purchaser made some untenable objection about the transfer of the flag, and also demanded the new mainmast, dories and chronometer. None of these objections were allowed to interfere with the final sale by the same owners to the same purchaser, for the owners had no difficulty in transferring the ship to the purchaser, and no new mainmast, dories and chronometer were furnished. The ship was sold and delivered to the same purchaser, upon the same terms and for the same price, as in the sale consummated by the appellant. These facts lead me to the inevitable conclusion that there was simply an attempt to avoid and evade the payment of appellant's earned commission, and go through the forms of a failure of compliance and a new sale. Judgment should have been for appellant.

or which shall result in the death of the insured under the above conditions,''

then the policy rendered the appellant liable for $600.

The plaintiff was the beneficiary named in the policy. On August 5, 1916, while the policy was in effect, the insured, who was a section foreman in the employ of the Northern Pacific Railway Company, while attempting to get upon a moving hand-car, was struck on the small of the back by the handle of the moving car. The accident occurred a few minutes before time to quit work in the evening. The insured arrived home about an hour later, and Mrs. Day examined the injury and found a bruise on the back about an inch and a half in diameter. She bathed the bruise that night with turpentine, and the next morning Mr. Day went to work, and the next evening Mrs. Day again bathed the bruise with turpentine. The bruise continued to swell until about the 20th of August, when Dr. Davis was called and pronounced the bruise a carbuncle. Thereafter Dr. McKinnon was called, and he, also, pronounced the bruise a carbuncle and lanced it. From the time of the injury the bruise continued to get worse, but Mr. Day went about his work until about the 20th of August. On the 23d he was taken to a hospital at Seattle and Dr. Willis was called. At that time Mr. Day was in a very serious condition. Dr. Willis called Dr. Burns in consultation and they concluded that nothing could be done for Mr. Day. That night about 12:30 Mr. Day died.

Prior to the time of the injury, Mr. Day had been in perfect health and had never been sick, except on one occasion when he had typhoid fever, which was many years ago. At that time he was advised that he might be subject to diabetes on account of the fact that he was a large man and a hearty eater. In answer to in-

terrogatories propounded to Dr. Willis, he stated as follows:

"When and where were you first called to attend deceased on account of his last illness? (a) Time 1 o'clock p. m. Wednesday, 23rd day of August, 1916. (b) Place, Seattle General Hospital.

"What was the direct or immediate cause of death? Answer in detail. Infection from carbuncle on back.

"What was the indirect cause or contributing cause of death? Answer in full detail. Diabetes, also history given of an accident which may have been the beginning of the carbuncle.

"Are you satisfied that the death of the deceased was due solely to bodily injuries effected exclusively and directly by external, violent and accidental means? No.

"Are there any facts not stated above which would serve to give a better understanding of the case? If so, state them. When I was called he was suffering from a severe infection from a very large carbuncle on the lower part of the back. Had sugar in the urine and gave a history of an accident a short time previously."

Dr. Burns gave answers substantially to the same effect. These two doctors did not see the patient until about twelve hours before his death, and then but for a few minutes. At that time the patient was in a semi-conscious condition. The other two doctors who had previously treated the patient, were not called as witnesses. Upon the answers to these interrogatories, the appellant argues that the death of the insured was not caused by external, violent and accidental means, but was caused by a disease with which the deceased was suffering at the time of the injury. The only evidence that the deceased was suffering from any disease at the time of the injury is contained in the answers to the questions of Doctors Willis and Burns; the substance of which is above quoted. We

think it cannot be said from this evidence alone that the death of the insured was caused by a disease other than the disease developed from the bruise. Counsel for appellant argue that the injuries caused by the handle of the hand-car striking deceased was not sufficient to cause a boil, but we think it is plain from the testimony of Mrs. Day and her daughter, who examined the deceased within a short time after the accident, that a large bruise, an inch and a half in diameter, was upon the small of his back. This bruise continued to grow worse and developed into a carbuncle, and the carbuncle, after it was lanced, developed an infection which caused the death of deceased. This clearly made a *prima facie* case of death from external, violent and accidental means. In order to show that the death was not caused by external, violent, accidental means it was necessary to show that there was some other cause. The evidence falls far short of showing any other cause.

The rule in cases of this kind is fairly stated, we think, in *White v. Standard Life & Accident Ins. Co.*, 95 Minn. 77, 103 N. W. 735, 884, as follows:

"Similar policies have been before both the state and federal courts, and the consensus of judicial opinion is that, subject to the exceptions contained in the policy, if the injury is the proximate cause of death, the company is liable, but, if an injury and an existing bodily disease or infirmity concur and co-operate to that end, no liability exists. If, however, the injury be the cause of the infirmity or disease—if the disease results and springs from the injury—the company is liable, though both co-operate in causing death. The distinction made in this particular is found in that class of cases where the infirmity or disease existed in the insured at the time of the injury, and, on the other hand, that class of cases where the disease was caused and brought about by the injury. And

even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists.''

We think it is plain from the evidence that the bruise was the primary cause of death; it developed into a carbuncle and an infection which caused the death. We find no evidence to indicate that deceased was afflicted with diabetes prior to the injury, and there is no evidence to show that the symptoms of diabetes were not caused by the infection. It is more probable that the symptoms of diabetes were caused by the injury, than that death resulted from diabetes or other disease.

We are satisfied the trial court properly gave judgment in favor of the respondent.

Affirmed.

MAIN, C. J., PARKER, FULLERTON, and HOLCOMB, JJ., concur.