## OSCAR A. ACKERMANN v. MINNESOTA COMMERCIAL MEN'S ASSOCIATION.[1]

November 27, 1931.

No. 28,639.

*Cox, Weeks & Kuhlmann* and *Linus J. Hammond,* for appellant.
*A. V. Rieke, Bonita F. Rieke,* and *Maurice H. Rieke,* for respondent.

OLSEN, J.

Plaintiff appeals from the judgment for defendant, entered on an order vacating a verdict in plaintiff's favor and directing the entry of judgment in defendant's favor notwithstanding the verdict.

[1]Reported in 239 N. W. 229.

The one question for review is whether the evidence would reasonably sustain a verdict for the plaintiff. Defendant moved for a directed verdict at the close of the evidence, and if the evidence was such that a verdict for plaintiff could not stand but would have to be set aside by the court, then defendant was entitled to a directed verdict and the court properly ordered judgment notwithstanding.

Defendant is an accident and disability insurance company. It does not insure lives, except to a limited extent where death is caused by accident. The deceased, Henry F. Ackermann, carried accident and disability insurance in defendant company. The contract of insurance provides for the payment of $5,000 for death of the insured resulting from bodily injuries "due to external, violent and accidental means of which there shall be external and visible evidence and which shall, independently of all other causes," result in death within 90 days from the date of accident. It is further provided that the defendant shall not be liable where the disability or death "occurs wholly or partially, directly or indirectly in consequence of any of the following causes, conditions, or acts,  *   *   * to-wit: Disease, bodily or mental infirmity,  *   *   *  fits, vertigo, *   *   *."

Decedent was 61 years of age. There was nothing in his appearance to indicate disease until a few minutes before his death. On November 4, 1929, he entered the St. Paul Union Depot and was walking along the main concourse or corridor leading to the train passages. The concourse has a tile floor and inclines slightly upwards in the direction he was walking. Three witnesses, employed in the depot, saw him as he walked along and described his appearance, manner of walking, and his fall. There was something peculiar about his appearance and walk which called their attention to him. Decedent had a staring look, walked in a stooping or bent-over position, and seemed to be laboring as if he were trying to get some place in a hurry. He was lagging along and was very shaky. He walked about 20 feet up this concourse and then went down near a signboard, fastened to the floor, but did not touch

the sign. He appeared to be ill and collapsed near the sign. He fell forward on his face. He was picked up and taken into one of the rooms close by and died a few minutes later. There were no external accidental means causing his fall. He did not slip, step upon, or stumble against any obstruction on the floor, but collapsed and fell because of some ailment or weakness in his own body. The only visible injury was a slight bruise and cut on the forehead over the right eye. There was no fracture of the skull or of any bones. The reasonable conclusion from the attendant facts shown is that the same condition which caused his fall also directly caused his death.

A deputy coroner of Ramsey county made a post-mortem examination of the body. He found the brain membranes showed a slight excess fluid and an engorgement of the vessels; some enlargement of the heart, and slight sclerosis of the mitral and aortic valves; calcified glands in the omentum; small tubercles in the intestines; liver sclerotic; gall bladder greatly dilated and containing many stones. He diagnosed the cause of death to be concussion of the brain and mitral and aortic insufficiency. The conditions found by him, without reference to his conclusions, rather persuasively indicate to the lay mind that death was caused by what we commonly refer to as heart failure or heart disease, from which men are daily passing away. The deputy coroner, while admitting that in his opinion the conditions he found did contribute to cause the death, was of the opinion that death might not have occurred at that immediate time if there had not been the fall and what he considered a concussion of the brain. He admitted that the conditions he found, aside from the fall, were such that the man might have lived for a long while or he might have collapsed at any time. He testified that heart disease frequently causes excess of fluid and engorgement of blood vessels in the brain; also that a heart condition may kill a person, without showing any pathology and in cases where a post-mortem, even with the use of the microscope, fails to show any heart findings.

Two other doctors, on hypothetical questions and with some qualifications, concurred in the opinion of the deputy coroner. One

of them said that to give the exact cause of death more findings were needed. These two doctors practically admit that an excess of fluid and engorgement of the vessels in the brain may be found where death results from heart disease or causes other than concussion or external violence. They do say that in such cases excess fluid would also be found in other organs of the body.

Defendant called three physicians, who gave their opinion that decedent died from heart disease and their reasons therefor. They agree with plaintiff's experts that the slight excess of fluid and engorgement of the vessels in the brain are commonly found after death, no matter what the cause of death was.

It is not for us to weigh the testimony or to pass upon disputes between medical experts. We are to give to the evidence the most favorable view permissible for the plaintiff. We are to construe the insurance contract in the same way and construe it strictly as to the insurer. But that does not permit us to disregard the plain provisions of the contract. When the contract limits liability for the death of the insured to death due to external, violent, and accidental means, which shall, independently of all other causes, result in death, we must give effect to the unambiguous language used. The burden of proof of the cause of death rests with the plaintiff under this contract.

When plaintiff's experts admit that the slight excess of fluid and the engorgement of the vessels in the brain, upon which their opinion that there was a concussion of the brain is based, are conditions commonly found after death from heart disease or other cause, and further admit that the diseased heart condition, or condition of the valves of the blood vessels in or near the heart, was at least a contributing cause of death, the foundation of their opinion as to concussion is so weakened, if not destroyed, that a verdict based thereon cannot stand. It leaves the matter within the realm of speculation.

Numerous authorities are cited by counsel for each party. An analysis of the cases would not be of material value here.

Judgment affirmed.