# BERTHA KUNDIGER v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

December 22, 1944.

No. 33,799.

[1]Reported in 17 N. W. (2d) 49.

26

■■■■■■■■■■■■■■■■■■■■■

See, 218 Minn. 168, 273, 15 N. W. (2d) 486, 487.

*Alric Anderson,* for appellant.

*Oppenheimer, Hodgson, Brown, Donnelly & Baer,* for respondent.

STREISSGUTH, JUSTICE.

Action to recover accidental death benefits under an industrial life insurance policy, its face amount having been paid prior to suit. The court at the close of the testimony directed a verdict for defendant, and plaintiff appeals from an order denying a new trial.

The policy provided that accidental death benefits could accrue only if death occurred "as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body"; and, further, that the accidental death benefits would not be payable "if such death resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form."

The general facts surrounding the death of the insured, Reinhold Kundiger, have been detailed in two previous· decisions and need not be restated. See, Kundiger v. Waldorf Paper Products Co. 218 Minn. 168, 15 N. W. (2d) 486, and Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487. In the latter case, which we shall refer to as the Metropolitan case, under provisions of two policies of insurance substantially the same as here involved, we held that the trial court erred in ordering judgment for only the face amount of the policies notwithstanding a verdict allowing recovery for accidental death benefits as well. Unless the evidence in opposition to plaintiff's theory of recovery is of such greater

weight in the instant case as to compel us to find, as a matter of law, that leukemia concurred and coöperated with trauma to cause insured's death, the same result must follow as in the Metropolitan case.

■ It is not important that the present defendant's motion was for a directed verdict in its favor rather than a motion for judgment notwithstanding a verdict for plaintiff. The sufficiency of plaintiff's evidence must be tested by the same rules in either situation, subject only to the qualification that a motion for judgment notwithstanding a verdict for plaintiff should not be granted if there is a reasonable probability that any deficiency in proof can be supplied upon a second trial. Neither motion should be granted unless there is complete absence of evidence reasonably sustaining plaintiff's claim, or unless the evidence in support of his claim is wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence as to leave nothing upon which a verdict can stand. Dunnell, Dig. & Supp. §§ 5082, 9764; Kingsley v. Alden, 193 Minn. 503, 259 N. W. 7; Applequist v. Oliver I. Min. Co. 209 Minn. 230, 296 N. W. 13; Eklund v. Kapetas, 216 Minn. 79, 11 N. W. (2d) 805. "If the record discloses evidence, taking the most favorable view of it for the plaintiff, sufficient to sustain a verdict for him, the motion [for a directed verdict] should not be granted." Osborn v. Will, 183 Minn. 205, 208, 236 N. W. 197, 199.

Defendant urges, however, that this case is governed by Brulla v. Cassady, 206 Minn. 398, 404, 289 N. W. 404, 407, in which we said:

"* * * Though the evidence on the part of the plaintiff standing alone would justify submitting a case to the jury, yet the court should direct a verdict for the defendant if, upon all the evidence, it would be its manifest duty to set aside a verdict against him. In other words, the court should direct a verdict in favor of a party in whose favor the evidence overwhelmingly preponderates, though there is some evidence in favor of the adverse party." See, also, Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; 6 Dunnell, Dig. & Supp. § 9764.

The rule so stated is to be "cautiously and sparingly exercised." The "test is not whether the court might in the exercise of its discretion grant a new trial," but whether "it would be its manifest duty to set aside a contrary verdict." Applequist v. Oliver I. Min. Co. 209 Minn. 235, 296 N. W. 15, *supra*. "Manifest duty to set aside a verdict" involves no discretion, no weighing of testimony, nor passing upon the credibility of witnesses, except in those extreme cases "where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is.'" Brulla v. Cassady, 206 Minn. 410, 289 N. W. 410, *supra*, quoting from Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 343, 53 S. Ct. 391, 395, 77 L. ed. 819, 824.

■ Before applying these tests to the record, it is proper that we stop to consider the necessity for, and the weight to be given to, the opinions of the medical experts. The causal connection between any bodily injuries Kundiger may have sustained and his subsequent death was admittedly a highly scientific question in view of his being afflicted with leukemia. The facts were not such that lay jurors could intelligently determine from their own knowledge and experience whether the injuries, if any, which insured sustained were the sole cause of death or whether leukemia was a contributing cause; hence, without some supporting expert medical testimony, there would have been no proper foundation for a finding by the triers of facts that the injuries were the sole cause of death, and a directed verdict would have been proper. Burton v. Holden & Martin Lbr. Co. 112 Vt. 17, 20 A. (2d) 99, 135 A. L. R. 512. And see, Getchell v. Hill, 21 Minn. 464, 465.

The issue here, unlike that of insanity or value, was not one which the jurors should have been permitted to solve by relying upon their own judgment and experience in disregard of unimpeached opinions of experts, though such opinions involved the ultimate fact to be determined. Nevertheless, if there was expert testimony in support of plaintiff's theory as well as defendant's, the choice of which testimony to accept and which to reject was for the jury and not for the trial court, unless the testimony of all of plaintiff's

experts was entirely discredited. The jury did not sit simply to count the number of expert witnesses testifying pro and con upon the technical issue involved, any more than upon an ordinary issue of fact, for "the opinion of one expert may, from proof of his greater knowledge and experience of the subject, or from his giving fuller details of the case, or more probable reasons for his opinion, be of greater value to the jury than the opposite opinions of several." Getchell v. Hill, 21 Minn. 464, 471.

The jury, it is true, could not arbitrarily have rejected the unanimous opinion of the qualified experts, based upon uncontradicted facts (Moore v. C. R. I. & P. Ry. Co. 151 Iowa 353, 131 N. W. 30); but if there was a difference of opinion between the experts, or a dispute in the facts upon which they based their opinions, it was the jury's prerogative to adopt, if it so chose, the testimony of any one or more experts which, reasonably construed, established the necessary causal connection between injury and death. Aetna L. Ins. Co. v. Ward, 140 U. S. 76, 88, 11 S. Ct. 720, 35 L. ed. 371, 376; Moore v. C. R. I. & P. Ry. Co. *supra;* Lawson, Expert and Opinion Evidence (2 ed.) pp. 177, 181; 20 Am. Jur., Evidence, § 867, 1206. Furthermore, the jury was not required to accept or reject the testimony of each expert *in toto;* his testimony, like that of any other witness, could be believed in part and disbelieved in part. People v. Vanderhoof, 71 Mich. 158, 173, 39 N. W. 28, 35; Ballam v. Metropolitan L. Ins. Co. 295 Mass. 411, 3 N. E. (2d) 1012, 108 A. L. R. 1. And, as pointed out in 20 Am. Jur., Evidence, § 782:

"* * * Every expert opinion rests on an assumption of fact; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proved; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts."

30

 It is important to point out that, in giving their respective opinions, the medical witnesses did not all assume the same facts. Dr. S. E. Stinnette and Dr. Roy C. Heron based their opinions largely upon findings at their examinations of Kundiger and of his corpse, while Dr. James C. McCartney and Dr. Max H. Hoffman based their opinions largely, if not exclusively, upon hospital records showing Kundiger's leukemic condition and upon McCartney's findings at the post-mortem examination made three months after death. Particularly important symptoms, according to plaintiff's experts, were the presence of "a great deal of swelling and ecchymosis on the left side of the neck" and "very extensive" hemorrhages "throughout all of the tissues of the neck" and "seeping into the * * * pleural cavity, down into the mediastinal space * * * into the lungs"; but these symptoms or effects of trauma were not present, according to Dr. McCartney, when he made his post-mortem examination, and neither he nor Dr. Hoffman assumed existence of such factual data in giving their respective opinions. This discrepancy in assumed data was partly accounted for by Dr. Heron's explanation that after performing his post mortem on February 3 he removed from the body "a globular mass about three inches in diameter consisting of the mediastinal glands, interstitial tissue, and a mass of hemorrhage."

It may be admitted that, upon the trial of the present case, the testimony of Dr. Stinnette that trauma was the cause of death lost most, if not all, of its probative value by his admissions upon cross-examination that leukemia was a contributing cause of death, and his further admission that he did not believe the insured "would have died if he had not had leukemia." The same cannot, however, be said of the testimony of Dr. Heron. Upon direct examination, the latter testified that, in his opinion, Kundiger "came to his death by extensive hemorrhages into the mediastinal space and into the lungs," and that the hemorrhage "was due to trauma." True, upon cross-examination, after admitting that in the death certificate approved by him no mention was made of trauma, he testified that "a leukemic is subject to hemorrhages," and that

"those hemorrhages may be spontaneous"; but the witness insisted that the extensive hemorrhages he found could not have been spontaneous or petechial hemorrhages symptomatic of leukemia and evidenced by small purple spots in the flesh.

Upon cross-examination, Dr. Heron further testified:

"Q. And it's also correct, isn't it, that a person with leukemia is much more likely to suffer a hemorrhage from a blow than would a person in normal health?

"A. I believe so.

"Q. And that hemorrhage would be not as subject to control in a leukemia as it would in a normal person?

"A. That is so.

"Q. In your opinion did—it is a fact that Mr. Kundiger had leukemia and it contributed to his death?

"A. It is my opinion it did.

\* \* \* \* \*

"Q. In your testimony you are assuming that Mr. Kundiger received a blow of certain force or severity?

"A. I am.

"Q. And now having in mind that same type of blow, are you of the opinion that Mr. Kundiger's death would have resulted if he had been a normal person, in normal health?

"A. That is my opinion.

\* \* \* \* \*

"Q. \* \* \* Assuming a blow of the force and severity that you have in mind that Mr. Kundiger received, would that blow in your opinion, have caused the death of a person in normal health?

"A. I believe it would."

This testimony of Dr. Heron was inconsistent and contradictory, but may have indicated confusion on his part as to the legal meaning of the phrase "contributing cause" rather than an unqualified admission that the trauma was not the sole cause of death. Such confusion is understandable when one considers the difficulty courts have experienced in dealing with similar situations. If, as Dr.

Heron testified, the blow which Kundiger received would have caused his death, irrespective of whether he was leukemic or in normal health, then leukemia was merely an attending circumstance and not a contributing or concurring cause of death. The active, efficient, procuring, and sole cause of his death in either condition of health would be the blow or trauma. Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 296 N. W. 576. Under the rule of that case, even the fact that Kundiger would not have died from the effects of the trauma had there been no leukemia in his system is not decisive that the trauma was not the sole cause of his death. See, also, 29 Am. Jur., Insurance, § 996.

And such is the rule of White v. Standard L. & A. Ins. Co. 95 Minn. 77, 80, 103 N. W. 735, 736, 5 Ann. Cas. 83, also, for as Mr. Justice Brown there pointed out, "even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists." The identical language is found in Stanton v. Travelers Ins. Co. 83 Conn. 708, 710, 78 A. 317, 318, 34 L.R.A.(N.S.) 445, 451, and approved in Rinaldi v. Prudential Ins. Co. 118 Conn. 419, 425, 172 A. 777, 780, where the court added: "Manifestly, recovery is not barred merely because the insured is suffering from disease. One upon a bed of sickness may meet death by explosion or other accidental means."

Turner v. Minneapolis St. Ry. Co. 140 Minn. 248, 249, 167 N. W. 1041, while not an insurance case, is much in point. There the deceased was injured in a collision between his automobile and a streetcar, and the sole question presented was whether the evidence was sufficient "to make a question for the jury as to whether his death resulted from the injuries which he had sustained in the collision." It was conceded that his death was caused by interstitial nephritis, but plaintiff contended that this disease was a consequence of the injuries sustained. This contention rested upon the testimony of Dr. Cowles, who made conflicting statements as to the cause of death. Holding that it was error to direct a verdict for defendant, this court said (140 Minn. 249, 167 N. W. 1041):

"* * * The doctor's testimony as to the cause of death was so contradictory and unsatisfactory that the trial court disregarded it, but we are unable to say that it was wholly without probative force. Doctors called by defendant stated that in their opinion the injuries sustained had no part in causing or hastening the death of the deceased for the reason that interstitial nephritis is incurable and not of a nature to be affected by such injuries. But the credibility of witnesses and the weight of evidence is for the jury to determine, and we are of opinion that the question should have been submitted to them."

So here, the credibility of Dr. Heron's testimony and the weight to be given to his testimony that death was due to trauma were jury questions.

Nor was the testimony of Dr. Heron overcome, as a matter of law, by that of defendant's experts, Dr. McCartney and Dr. Hoffman. The former based his opinion that "the cause of death was lymphatic leukemia" "wholly and solely" upon his own findings upon a post-mortem examination made by him on April 23, 1943, nearly three months after Kundiger's death. He testified that he found "no sign or evidence of hemorrhages in the neck," nor any "extension of hemorrhages into the mediastinal space" or cavity between the lungs, nor any evidence of hemorrhages "in the subcutaneous tissues around the collar line," as found by Dr. Stinnette, and he disputed the latter's testimony as to the presence of these important symptoms of trauma. The only hemorrhages which Dr. McCartney found were what he called petechial, or spontaneous hemorrhages, indicative of the presence of leukemia, but of no significance in determining whether there was a trauma. When asked to take into consideration the findings of Dr. Stinnette, Dr. McCartney qualified his answers and testified that if the post mortem disclosed interstitial hemorrhages in the mediastinal space, the hemorrhage *"could"* be spontaneous and. due entirely to leukemia. Also, that any ecchymotic condition of the skin and surrounding tissues around the collar line, such as Dr. Stinnette observed and Dr. McCartney did not observe, *"could"* be due entirely to leukemia. Hav-

ing failed in the first instance to base his opinion upon all the facts disclosed by the record, and having in the second instance, by the use of the word "could," declined definitely to attribute such interstitial hemorrhages and ecchymotic condition to leukemia, the jury had a right entirely to disregard his opinion as to the cause of death.

Dr. Hoffman, testifying hypothetically only, based his opinion that Kundiger had not received a blow or trauma and that death was due to lymphatic leukemia upon Dr. McCartney's post-mortem findings. Asked whether the hemorrhagic and enlarged mediastinal glands, which Dr. Heron's post-mortem notes disclosed, could have been caused solely by leukemia, he also qualified his answer by saying, "that *could* have been caused solely by leukemia." He likewise testified that the edematous tissues and the ecchymotic condition of the skin and tissues found by Dr. Heron *"could* have been caused" by leukemia. His testimony, therefore, like that of Dr. McCartney, could have been entirely disregarded by the jury for identical reasons.

Defendant also seeks to distinguish the evidence in the two cases in respect to the sufficiency of proof of a trauma and in other respects, but we fail to see any distinction sufficiently vital to justify our reaching a result different from that in the Metropolitan case. Viewing the entire record objectively, as we must, we hold that the questions whether Kundiger sustained an injury and whether such injury was the sole cause of his death notwithstanding his leukemic condition, were questions of fact which could not be disposed of adversely to plaintiff upon defendant's motion for a directed verdict in its favor.

Reversed.

MAGNEY, JUSTICE (dissenting).

If the evidence as to the cause of death in this case be found to be substantially the same as that presented in the Metropolitan case, a reversal should necessarily follow. The question here is whether the testimony in this case so differs from the testimony in the Metropolitan case as to compel a contrary disposition. To an-

swer that question it becomes necessary to examine in detail the medical testimony presented by plaintiff in each of the two cases.

In the Metropolitan case, three physicians testified for plaintiff. Dr. S. E. Stinnette, the attending physician, stated that the cause of death was "hemorrhage, due to trauma or injury" (218 Minn. 278, 15 N. W. [2d] 491). He was not asked and said nothing of leukemia as a contributing cause. In the instant case, his testimony on direct examination in full on this phase of the case is as follows:

"A. I think he died from the result of an accident, a blow on the side of his neck, left neck.

"Q. * * * Would a blow on the neck have any relationship between the black and blue on the neck and the hemorrhages in the neck area, and mediastinum, and lungs such as you have just testified to?

"A. It certainly would.

"Q. A blow could produce such a hemorrhage?

"A. It could."

On cross-examination he said:

"A. There was an accident.

＊　＊　＊　＊　＊

"Q. Dr. Stinnette, is it your contention that the leukemia from which Mr. Kundiger was suffering played a part in his death?

"A. In my opinion, it did play a part in his death.

"Q. *It is your opinion that the leukemia was a contributing factor in his death?*

"A. *I think it was.*

＊　＊　＊　＊　＊

"Q. Isn't it correct that a person having leukemia is much more subject to hemorrhages received from a blow than a person would be with normal health?

"A. Yes, I believe so.

＊　＊　＊　＊　＊

"Q. In giving your answer as to your opinion of his death, doc-

tor, how severe a blow are you assuming that this man received?

"A. I don't know how to measure severity. I would say enough to rupture the blood vessels in his neck, and light enough that it might have been taken by some normal person.

"Q. * * * Assuming that Mr. Kundiger did not have leukemia, have you an opinion as to whether or not his death would have resulted from the blow that you assume he had?

"A. That theoretically I could answer either way. I don't know. I don't believe he would.

"Q. You don't believe he would have?

"A. I don't believe he would have died if he had not had leukemia. A more normal individual of the same type, receiving a blow on the neck as he probably suffered and received, but there is no way of knowing what he had on. I believe a more normal individual probably could have died from hemorrhages received from that blow.

"Q. Am I correct in summarizing *your testimony, as part of your testimony, doctor, when you say that in your opinion that leukemia was a contributing cause to his death?*

"A. *Yes.*

"Q. *And you don't believe he would have died unless he had been leukemic or did not have another similar disease?*

* * * * *

"Q. You answered it that way?

"A. *Yes."* (Italics supplied.)

As stated in the Metropolitan case, there was no testimony by Dr. Stinnette that leukemia was a contributing cause of death.

Plaintiff also called Dr. Roy C. Heron, a deputy coroner of Ramsey county, as a witness in both trials. In the Metropolitan case, he testified that he found black-and-blue areas on both sides of the neck and jaw. In the instant case, when asked about the cause of death, he testified:

"A. My opinion is that he came to his death by extensive hemorrhages into the mediastinal space and into the lungs.

"Q. Have you an opinion as to the cause of that hemorrhage?

"A. I have.

"Q. What is your opinion, doctor?

"A. It was due to trauma."

On cross-examination he was asked:

"Q. And it is also correct, isn't it, that a person with leukemia is much more likely to suffer a hemorrhage from a blow than would a person in normal health?

"A. I believe so."

In the instant case he was asked:

"Q. *In your opinion did—it is a fact that Mr. Kundiger had leukemia and it contributed to his death?*

"A. *It is my opinion it did.*

"Q. *It did?*

"A. *It did.*

\* \* \* \* \*

"Q. And now having in mind that same type of blow, are you of the opinion that Mr. Kundiger's death would have resulted if he had been a normal person, in normal health?

"A. That is my opinion.

\* \* \* \* \*

"Q. \* \* \* Assuming a blow of the force and severity that you have in mind that Mr. Kundiger received, would that blow in your opinion have caused the death of a person in normal health?

"A. I believe it would." (Italics supplied.)

Thus Dr. Heron testified inconsistently that leukemia contributed to the death of Kundiger and also that a blow such as he assumed Kundiger received would have caused the death of a person in normal health.

In the Metropolitan case, Dr. Robert M. Burns was called by plaintiff and testified that insured (218 Minn. 279, 15 N. W. [2d] 492) "died as a result of an injury which caused a hemorrhage and swelling and congestion into the tissues of the neck and down

into the lungs." In his testimony nothing was said about leukemia contributing to the death. Dr. Burns was not called as a witness in the instant case.

Dr. James C. McCartney, who performed a post mortem, was called by defendant, and testified that the cause of death was lymphatic leukemia. Dr. Max H. Hoffman, called by defendant, also expressed his opinion that death was caused by lymphatic leukemia. The record indicates that in November 1940 Kundiger's ailment was diagnosed as leukemia. He died February 2, 1943.

On the medical testimony offered by plaintiff herself, it cannot be said that she sustained the burden of proof that death resulted solely from injuries received through accident. It was incumbent upon plaintiff, as beneficiary, to prove that Kundiger's death resulted solely from accidental causes. This "is not a case where the accidental injuries claimed either caused the disease or lit it up from a dormant condition," as the trial court observed. In my opinion, the medical testimony in this case is so substantially different from that produced in the Metropolitan case as to compel an opposite result.

On this medical testimony and the other testimony in the case, Judge Michael stated in his memorandum:

"The evidence here conclusively shows that the disease leukemia was an efficient, contributing cause, at least, to the death of the insured.

"All of the experts agree on that. Dr. Stinnette and Dr. Heron, the plaintiff's two experts expressly stated that in their opinion the disease contributed to the death.

"These two physicians the day after his death conducted a post-mortem examination in which they claim to have made an extensive examination of the body.

"They joined in the death certificate stating that death was caused by leukemia.

\* \* \* \* \*

"So it seems to me entirely clear that there is no question here but what this fatal disease was at least an efficient contributing

factor causing the death, if not the sole means, and under the express language of this policy, if that is true, then there is no liability on the part of the defendant."

In White v. Standard L. & A. Ins. Co. 95 Minn. 77, 80, 103 N. W. 735, 736, 5 Ann. Cas. 83, this court laid down these rules:

"* * * if the injury be the proximate cause of death, the company is liable, but, if an injury and an existing bodily disease or infirmity concur and co-operate to that end, no liability exists. * * * in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists."

And in Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 441, 296 N. W. 576, 577, this court said:

"While this contract of insurance must be construed and applied as written, any construction so unduly restrictive that it would defeat the ends of accident insurance must be avoided. It is not to be supposed that a contract like this is limited in coverage only to those entirely healthy and free from all physical defects and deficiencies. Neither may it be said that coverage exists wherever accident has coöperated with physical defect or deficiency to produce death. * * * It will be seen that the problem is largely one of causation."

In the Metropolitan case, Mr. Justice Streissguth, speaking for the court, said (218 Minn. 281, 15 N. W. [2d] 493):

"The rule of proximate cause, as applied to actions of negligence, cannot, however, be applied in its full scope to contracts of this nature. White v. Standard L. & A. Ins. Co. *supra*. This is true because under the parties' express contract a recovery can be had only if death resulted 'solely' (not proximately) from injuries received through accidental means, and, if the insured's condition was a contributing cause, there can be no recovery. Ackermann v. Minnesota Commercial Men's Assn. 184 Minn. 522, 239 N. W. 229;

Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557; Kingsland v. Metropolitan L. Ins. Co. 97 Mont. 558, 37 P. (2d) 335."

On the medical testimony in behalf of plaintiff, as presented to the court in the record in this case, different from that presented in the Metropolitan case, death did not result *solely* from injuries received through accidental means, and leukemia, from which insured was suffering, was a contributing cause.

For the reasons above set out, I respectfully dissent.

JULIUS J. OLSON, JUSTICE (dissenting).

While fully concurring in the dissent of Mr. Justice Magney, I wish to add a few observations of my own.

This is an action involving contract rights and obligations. Under the terms of the policy, the burden fell upon plaintiff to prove that her husband's death occurred "as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means," and that such death did not result "directly or indirectly from bodily or mental infirmity or disease in any form."

The majority opinion concedes that the testimony of Dr. Stinnette that trauma was "the cause of death lost most, if not all, of its probative value by his admissions upon cross-examination that leukemia was a contributing cause of death, and his further admission that he did not believe the insured 'would have died if he had not had leukemia.'" Therefore, there is left as the only basis for reversal here certain parts of the testimony given by Dr. Heron. His testimony at this trial has been fully related by Mr. Justice Magney, who has demonstrated that there are important—in fact vital—differences in the doctor's testimony at the trial in the Metropolitan case and what he testified to in this one. Dr. Heron's opinion in this case was that "Mr. Kundiger had leukemia and it contributed to his death." The majority opinion concedes that his testimony "was inconsistent and contradictory." But, it is said, his testimony indicates "confusion on his part as to the legal meaning of the phrase 'contributing cause' rather than an unqualified

admission that the trauma was not the sole cause of death." In the situation stated, there being, concededly, confusion in his testimony, as well as inconsistency and contradiction, upon what basis could a verdict for plaintiff stand? Let it be assumed that a verdict for plaintiff had been found, could such verdict be said to have sufficient support to warrant affirmance?

It seems to me, too, that the majority opinion fails to distinguish between the rules of law applicable in negligence cases and those relating to cases arising out of contract. Obviously, that distinction is highly important, since in negligence cases defendant's conduct is measured by the standard of reasonable care in the circumstances shown in that particular case. In such action, any tortfeasor whose negligence contributed as a material factor in causing harm to the plaintiff would be liable in damages for the full amount of his loss. For that reason, I think that what the majority has quoted from Turner v. Minneapolis St. Ry. Co. 140 Minn. 248, 167 N. W. 1041, is not "much in point." In that case, plaintiff's cause was founded upon negligence, the action being under our death-by-wrongful-act statute. What the court was there considering and deciding related to the facts before it; hence decedent's cause of death, if contributed to by the defendant, established its liability. Not so here. If that case had involved the same question as is here presented, I think there is no doubt that a directed verdict for defendant would have been sustained. If we are to extend to cases of this type the doctrine of contributing causation as a basis for the insurer's liability, we shall thereby be changing its liability from that of an accident policy to one of life insurance.

There is no suggestion made by either party that the language chosen and used by the parties to this policy is involved in uncertainty or contradictions. To me, the present record leaves no doubt that leukemia was a contributing factor in Kundiger's death. He had been treated for that very ailment over a considerable period of time. He knew what his ailment was and had sought and obtained medical aid to remedy his malady, which admittedly was

incurable. It had progressed over a long period of time. No one, I submit, can read this record without arriving at the conclusion that his physical condition (leukemia) contributed to his death. Applicable here is the test applied in White v. Standard L. & A. Ins. Co. 95 Minn. 77, 80, 103 N. W. 735, 736, 5 Ann. Cas. 83, that "if an injury and an existing bodily disease or infirmity concur and co-operate to that end [death of the insured], no liability exists" under the terms of this policy. Interesting, too, is the case of Kundiger v. Waldorf Paper Products Co. 218 Minn. 168, 15 N. W. (2d) 486, where the industrial commission found that Kundiger died from the effects of leukemia and that the claimed accident did not contribute thereto.

Since a verdict for plaintiff in this case would have to be set aside for lack of sufficient facts to sustain it, the direction of verdict by the trial court was right, and its order should be sustained.

