Carol GALANTE, et al., Appellants,

v.

OZ, INC., et al., Respondents.

No. C3–85–643.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Terence J. McCloskey, Kevin Shea, Johnson, Sands, Lizee, Fricker & McCloskey, P.A., Minneapolis, for appellants.

John Daubney, St. Paul, for respondents.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellants Carol Galante and Concord Group, Inc. appeal from the trial court's denial of amended findings or, in the alternative, a new trial. The trial court ruled

that appellants were entitled to recover the $35,000 paid to respondent, Virgil Doerfler, as a down payment towards purchase of the Oz nightclub. Doerfler was allowed a $30,000 setoff against this amount for an unpaid personal loan he made to Joe Galante. The trial court also found that Doerfler had not been unjustly enriched and denied Galante recovery on a quasi-contract claim. We affirm.

## FACTS

In early 1980, Doerfler entered into negotiations with Joseph Galante to sell Galante the Oz nightclub. The sales agreement conditioned the sale on the successful transfer of the on-sale liquor license from Doerfler to Galante. The agreement also provided that pending this transfer, Galante would be permitted to observe and learn the operations of the Oz. On March 18, 1980, Derek Jones on behalf of Galante took over as manager of the Oz and continued in that position until October 27, 1980. During this period, Doerfler moved to Phoenix, Arizona and took no active part in managing the Oz.

The attempt to transfer the liquor license was unsuccessful. The application for the transfer named Carol Galante and the Concord Group as the prospective owners. When the City of St. Paul inspector investigated, however, he found that Joe Galante would in fact be operating the Oz. At that time Joe Galante was facing drug charges. The parties were notified that because of those charges the license transfer would not be recommended. To avoid a refusal of the transfer, the parties withdrew the application. They believed that once the drug charges were resolved, a transfer would still be possible.

In fact, the parties never reapplied for a transfer of the license. On October 27, 1980, Doerfler ordered Jones to vacate the premises. Doerfler's son, Mark, then took over management of the Oz until it was sold to another party.

Derek Jones did not testify at trial. However, his deposition was admitted into evidence. Jones stated he had, in the past, worked for Joe Galante and was hired by Galante to manage the Oz. Jones stated he was supposed to receive a salary for his services, but because of cash flow problems he agreed to take a bonus upon completion of the sale. Further, Jones billed many of his daily expenses to the Oz. The expenses included living in the penthouse above the Oz, leasing a limousine, hiring a driver for the limousine, dry cleaning, membership in the St. Paul Athletic Club, and the purchase of tuxedoes. When Jones' management services ceased, he never made a claim upon either Galante or Doerfler for wages.

During the sale negotiations, several different sums of money were exchanged between the parties. Galante made a sale down payment of $35,000 to Doerfler. Jones wrote a check from an Oz account to Galante for $8,000 to reimburse him for cash advances he had made to vendors. Doerfler made a $30,000 personal loan to Galante under rather unusual circumstances. Doerfler made out three checks for $9,500 each to himself, Galante and Kurt Henriksson, a former employee of Doerfler's. Henriksson and Doerfler then cashed their checks and gave the money to Galante. Doerfler testified he also gave Galante $1,500 in cash. Allegedly this was done to prevent an inquiry from the tax department and banking authorities. In addition, Doerfler testified that Galante told him he needed money for a divorce. Galante claimed the loan was to buy cocaine for Doerfler.

Galante also presented expert testimony through an accountant whose testimony was based upon his review of several documents including the parties' depositions, financial statements from the accounting firm Jones retained while managing the Oz, the purchase agreement, tax returns, a check register which he did not audit and which did not include all the actual checks, and a January 31, 1980, balance sheet from the Oz which was also unaudited.

There was extensive testimony that Joe Galante rather than Carol Galante was the active participant in the transaction with Doerfler. The trial court found that Joe

Galante was in fact the real party in interest.

## ISSUES

1. Did the trial court err in finding that Doerfler had received no benefit from Galante's services and was not unjustly enriched?

2. Did the trial court err in finding that any cash advances Galante made to vendors were offset by an $8,000 check withdrawn from an Oz account?

3. Did the trial court err in finding that Doerfler was entitled to a $30,000 setoff for a personal loan to Galante?

## ANALYSIS

Galante claims that the trial court erred in not granting his motion for a new trial on the grounds that several of its findings were clearly erroneous and contrary to a preponderance of the evidence.

When reviewing a trial court's denial of a motion for a new trial the issue is:

whether the trial court violated a clear legal right of defendant or abused its judicial discretion in refusing to grant a new trial.

*Austin v. Rosecke*, 240 Minn. 321, 324, 61 N.W.2d 240, 243 (1953). This court gives due regard to the trial court's opportunity to judge the credibility of the witnesses and will not set aside the trial court's findings unless they are clearly erroneous. Minn.R.Civ.P. 52.01. When the trial court sits without a jury as in the present case, and considers a great deal of conflicting testimony, the findings of fact will not be upset if there is evidence that reasonably supports them. *Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn.1977).

## I.

Galante claims that Doerfler benefited from Galante's management of the Oz while awaiting completion of the sale and that he is entitled to compensation for his services on a quasi-contractual basis.

A quasi-contract will be imposed if failure to do so would result in unjust enrichment. *Dusenka v. Dusenka*, 221 Minn. 234, 21 N.W.2d 528 (1946). Unjust enrich-

ment does not exist where one party has merely made a bad bargain. *Cady v. Bush*, 283 Minn. 105, 110, 166 N.W.2d 358, 362 (1969). There is not unjust enrichment:

because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term "unjustly" could mean illegally or unlawfully.

*First National Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981).

To determine that unjust enrichment rather than simply a bad bargain exists, there need to be circumstances showing a benefit was conferred unknowingly or unwillingly. *See, e.g., Braun v. Hamack*, 206 Minn. 572, 289 N.W. 553 (1940) (plaintiff expended money and effort for own benefit); *Anderson v. DeLisle*, 352 N.W.2d 794 (Minn.Ct.App.1984), *pet for rev. denied,* (Minn. Nov. 8, 1984) (seller knew there was little chance contract would succeed).

In the present case, there are no circumstances to indicate Galante unknowingly or unwillingly conferred a benefit on Doerfler. Both parties believed the sale of the nightclub would succeed. The services and effort that Galante expended were not required to complete the sale. Rather, he chose to manage the Oz to learn the business for his own benefit. Any efforts were expended for his own benefit when he became owner and not for the benefit of Doerfler.

Further, recovery for unjust enrichment is based on the "value of the services rendered less the benefits received." *Pfuhl v. Sabrowsky*, 211 Minn. 439, 442, 1 N.W.2d 421, 422 (1941). The trial court found that neither Jones' services nor Galante's management resulted in any net profit to Doerfler. Based on these findings, Galante would not be entitled to recover under his quasi-contract claim.

We conclude that there was sufficient evidence in the record to reasonably support the trial court's findings. Jones testified that there was no profit from the Oz while he was managing. There was testimony that Galante did not pay Jones a

salary but rather Jones charged many of his expenses to the Oz as part of his compensation. Jones has never made a claim for compensation from Galante. Other than the $35,000 down payment, there was no evidence that Galante expended any of his own funds for the improvements that he claims were made.

■ Doerfler argues that Galante's claim for unjust enrichment is barred by the two year statute of limitations contained in Minn.Stat. § 541.07(5) (1984). Doerfler did not, however, file a notice of review as required by Minn.R.Civ.App.P. 106. Therefore, the issue is not properly before this court and will not be reviewed. In any event, we would find it unnecessary to address Doerfler's allegations because of our resolution of the unjust enrichment issue on other grounds.

## II.

■ Next, Galante contends that the trial court erred in finding that the cash advances Galante made to cover operating expenses when he first assumed management of the Oz were offset by an $8,000 check drawn on the Oz account and sent to Carol Galante. Galante claims that his expert witness testified that the advances totaled $10,193.44 and that the trial court should have deferred to his expert witness on this issue and awarded Galante the $2,193.44 difference.

The trial court indicated in the memorandum accompanying its findings of fact and conclusions of law that many of the expert witness's calculations were correct from an accounting standpoint but were not based on complete or accurate information. Under these circumstances the trial court was not required to totally accept the expert's testimony. *See Kundiger v. Prudential Insurance Co. of America,* 219 Minn. 25, 17 N.W.2d 49 (1944).

■ Jones could not testify to exactly how much cash Galante had supplied for paying the vendors. Neither could Galante provide documentation showing exactly how much money he had advanced. The trial court had the opportunity to observe and judge the credibility of the witnesses.

We cannot conclude that it was clearly erroneous in finding that the cash advance was set off by the $8,000 check.

## III.

■ Finally, Galante argues that the trial court erred in allowing Doerfler's claim for a $30,000 setoff based on Galante's failure to repay a personal loan from Doerfler. Galante claims the loan was for an illegal drug purchase and therefore is unenforceable.

As the trial court notes in its findings of fact, the circumstances surrounding the loan transaction were confusing and suspicious. On a review of the record, however, we conclude that there was reasonable support for the trial court's finding. Both Doerfler and Henriksson testified that there was no mention of a drug deal when the cash was transferred. Other than his own testimony, Galante presented no evidence that there was a drug deal. Further, Galante presented no evidence to contradict the existence of the loan. Once again the trial court had the advantage of observing these witnesses and judging their credibility. We find no error.

## DECISION

1. The trial court did not err in finding that Doerfler had received no benefit from Galante's services and was not unjustly enriched.

2. The trial court did not err in finding that Galante's claim for cash advances made to vendors was offset by an $8,000 check withdrawn from an Oz account.

3. The trial court did not err in finding that Doerfler was entitled to a $30,000 setoff for a personal loan he made to Galante.

Affirmed.